2023-2386

# United States Court of Appeals for the Federal Circuit

METACEL PHARMACEUTICALS LLC,

*Plaintiff-Appellant,*

– v. –

RUBICON RESEARCH PRIVATE LTD.,

*Defendant-Appellee.*

*On Appeal from the United States District Court for the District of New Jersey in No. 2:21-cv-19463-EP-JRA, Honorable Evelyn Padin, Judge*

## NON-CONFIDENTIAL BRIEF FOR DEFENDANT-APPELLEE

TIMOTHY H. KRATZ
GEORGE J. BARRY, III
KRATZ & BARRY LLP
1050 Crown Pointe Parkway
Suite 500
Atlanta, Georgia 30338
(404) 341-6600
tkratz@kratzandbarry.com
gbarry@kratzandbarry.com

MICHAEL P. HOGAN
KRATZ & BARRY LLP
325 Chestnut Street, Suite 883, #259
Philadelphia, Pennsylvania 19106
(404) 341-6600
mhogan@kratzandbarry.com

R TOUHEY MYER
KRATZ & BARRY LLP
800 North West Street
Wilmington, Delaware 19801
(302) 527-9378
tmyer@kratzandbarry.com

*Counsel for Defendant-Appellee*

MARCH 13, 2024

## REPRESENTATIVE PATENT CLAIMS

**U.S. Patent No. 10,610,502:**

Representative Claim 1:

**1.** A method of relaxing muscles or treating spasticity in a subject in need thereof comprising administering to the subject an effective amount of an aqueous oral solution comprising (i) baclofen, (ii) a buffer comprising citric acid, a salt of citric acid, or any combination thereof, and (iii) optionally one or more preservatives, wherein prior to the administration, the amount of 4-(3-carboxymethyl)-3-hydroxy-2,5-dioxopyrrolidin-1-yl)-3-(4-chlorophenyl) butanoic acid in the oral solution is determined to be below a threshold level and the oral solution is stored after the determination, but prior to the administration, at from about 2 to about 8° C.

Appx6271.

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-2386

**Short Case Caption** Metacel Pharmaceuticals, LLC v. Rubicon Research Private Limited

**Filing Party/Entity** Rubicon Research Private Limited

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 03/13/2024

Signature: /s/ R Touhey Myer

Name: R Touhey Myer

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br>☐ None/Not Applicable |
| Rubicon Research Private Limited | | General Atlantic Singapore RR Pte. Ltd. |
| | | General Atlantic Singapore Fund Pte. Ltd. (Singapore) |
| | | General Atlantic Singapore Interholdco Ltd. (Bermuda) |
| | | Gap Bermuda L.P. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ *ii*
STATEMENT OF RELATED CASES ........................................................................ 1
STATEMENT OF THE ISSUES ........................................................................ 2
INTRODUCTION ........................................................................ 3
STATEMENT OF THE CASE ........................................................................ 4
STANDARDS OF REVIEW ........................................................................ 17
SUMMARY OF THE ARGUMENT ........................................................................ 19
ARGUMENT ........................................................................ 22
I. The District Court's Summary Judgment of Non-Infringement Should be AFFIRMED upon this Court's *de novo* Review ................ 22
II. The District Court's Denial of Metacel's Motion For Reconsideration Based on Alleged Procedural Errors should be AFFIRMED ........................................................................ 38
CONCLUSION ........................................................................ 45

CONFIDENTIAL MATERIAL OMITTED

The material redacted from this brief is subject to a Discovery Confidentiality Order dated May 9, 2022 (U.S.D.C.(D.N.J.)(ECF No. 33.) The confidential information on pages 2, 3, 7, 8, 10, 11, 14, 15, 16, 17, 20, 21, 23, 24, 25, 32, 33, and 34 relates to an invention disclosure document, a technical paper, and/or deposition testimony regarding those documents, which have been designated as confidential.

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Amarin Pharma, Inc. v. West-Ward Pharms. Int'l Ltd.*,
407 F. Supp. 3d 1103 (D. Nev. 2019) .................................................. 32, 33

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)................................................................ 18, 20, 22, 32

*Astellas United States LLC v. Hospira, Inc.,*
Civ. App. No. 2022-1878, 2022 U.S. App. LEXIS 35933
at *19 (Fed. Cir. Dec. 30, 2022) ..................................................................40

*AstraZeneca LP v. Apotex, Inc.*,
633 F.3d 1042 (Fed. Cir. 2010) .......................................................... *passim*

*Bayer AG v. Elan Pharm. Res. Corp.*,
212 F.3d 1241 (Fed. Cir. 2000) ...................................................................19

*Canon, Inc. v. Color Imaging, Inc.*,
227 F.Supp.3d 1303 (N.D.Ga.)(Dec. 14, 2016) ..........................................44

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)......................................................................................19

*Cross Meds. Prods. v. Medtronic Sofamor Danek, Inc.*,
424 F.3d 1293 (Fed. Cir. 2005) .....................................................................6

*Cunningham v. Fulton County, Ga.*,
785 F. App'x 798 (11th Cir. 2019)................................................................43

*Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*,
845 F.3d 1357 (Fed. Cir. 2017) ..................................................... 26, 34, 35

*Ferring B.V. v. Watson Labs., Inc.*,
764 F.3d 1401 (Fed. Cir. 2014) .......................................................... *passim*

*Genentech, Inv. v. Amgen, Inc.,*
289 F.3d 761 (Fed. Cir. 2002) .....................................................................44

*Glaxo Inc. v. Novopharm Ltd.*,
110 F.3d 1562 (Fed. Cir. 1997) ...................................................................30

*Glaxosmithkline LLC v. Teva Pharms. USA, Inc.*,
7 F.4th 1320 (Fed. Cir. 2021) ......................................................... 26, 31, 32

*Golden Bridge Tech., Inc. v. Apple Inc.*,
758 F.3d 1362 (Fed. Cir. 2014) .................................................. 17, 18, 38

*Graco Children's Products Inc. v. Kids II,*
Civil Action No. 13-cv-1183,
2018 U.S. Dist. LEXIS 49865 (N.D.Ga.)(Mar. 26, 2018) ...........................44

*Grunenthal GmbH v. Alkem Labs. Ltd.*,
919 F.3d 1333 (Fed. Cir. 2019) ............................................ 26, 35, 36, 38

*HZNP Meds. LLC v. Actavis Labs. UT, Inc.*,
940 F.3d 680 (Fed. Cir. 2019) ........................................................... *passim*

*In re Fine Paper Antitrust Litigation,*
685 F.2d 810 (1982) ..................................................................... 40, 41

*Janssen Pharms., Inc. v. Mylan Labs. Ltd.*,
C.A. No. 20-CV-13103, 2023 U.S. Dist. LEXIS 90278
(D.N.J. May 23, 2023) ................................................................. 33, 43

*King v. Verizon New Jersey, Inc.,*
2023 WL 5817126 (D.N.J. Sept. 6, 2023)..................................................43

*Matsushista Elec. Indus. Co. v. Zenith Radio Corp*.,
475 U.S. 574 (1986).................................................................... 19, 20

*MGM Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005)...........................................................................34

*Par Pharm., Inc., v. QuVa Pharma, Inc.*,
Civil Action No. 17-6115, 2018 U.S. Dist. LEXIS 20775
(D.N.J. Feb. 8, 2018) .................................................................. 42, 43

*Pitney Bowes, Inc. v. Hewlett-Packard Co.*,
182 F.3d 1298 (Fed. Cir. 1999) ..............................................................17

*Ray v. Pinnacle Health Hosps., Inc.*,
416 F. App'x 157 (3d Cir. 2010) ............................................................25

*Seahorse Oceanside Apartments Condo. Ass'n v. Homesite ins. Co.*,
446 F. Supp. 3d 1097 (S.D. Fla. 2020).................................................. 42, 43

*Shire LLC v. Amneal Pharms., LLC,*
802 F.3d 1301 (Fed. Cir. 2015) ..............................................................18

*Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*,
785 F.3d 625 (Fed. Cir. 2015) .......... *passim*

*Tritek Techs., Inc. v. United States*,
63 Fed. Cl. 740, 743 (2005) .......... 43

*United States v. Komlo*,
802 F. App'x 676 (3d Cir.)(Jan. 29, 2020) .......... 40

*Vanda Pharms Inc. v. West-Ward Pharms. Int'l Ltd.*,
887 F.3d 1117 (Fed. Cir. 2018) .......... 26, 27, 28

*Warner-Lamber Co. v. Apotex Corp.*,
316 F.3d 1348 (Fed. Cir. 2003) .......... 6

*ZF Meritor, LLC, v. Eaton Corp.,*
696 F. 3d 254 (3d Cir. 2012) .......... 40

**Statutes**

Hatch-Waxman Act .......... *passim*

**Rules**

Fed. R. Civ. P. 56(a) .......... 18, 20

Fed. R. Civ. P. 56(e) .......... 19

Fed. R. Civ. P. 56(f) .......... 11, 39

Local Patent Rule 3.6 .......... 44

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Appellee Rubicon Research Private Ltd. ("Appellee Rubicon" or "Rubicon") states that to the best of its knowledge, there are no other cases pending in any tribunal that will directly affect or be affected by the Federal Circuit's decision in this appeal. Appellee further states that the counterclaim asserted by Rubicon against Appellant Metacel Pharmaceuticals LLC ("Appellant Metacel" or "Metacel") remains pending in the United States for the District Court for the District of New Jersey, No. 2:21-cv-19463-EP-JRA, but has been stayed pending the Federal Circuit's decision in this appeal. Rubicon asserts damages against Metacel for maintaining this litigation in bad faith from the time it received Rubicon's ANDA, including its proposed label, through present, which has caused Rubicon to incur antitrust injury in the form of litigation expenses and by improperly delaying Rubicon from obtaining Final Approval for its ANDA product from March 13, 2023 onwards, all in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

## STATEMENT OF THE ISSUES

Whether the district court erred in granting summary judgment of non-infringement where the patent claims all require storage of the oral solution in refrigerated conditions as an essential claim limitation, and where the label of the accused product unambiguously instructs the downstream user to store the oral solution at temperature (*e.g.* temperature conditions) and further states that temperature is merely optional.

## INTRODUCTION

This action is a typical Hatch-Waxman Act case, except that it should either never have been brought or should have been voluntarily dismissed once Appellant Metacel received production of Appellee Rubicon's ANDA at the start of the litigation. This is so because the non-infringement of the ANDA is absolute with respect to the undisputed factual basis and is premised on a simple application of well-established Federal Circuit precedent, summarized as follows:

1. There is no dispute that all of Metacel's method patent claims require storage of the oral solution in refrigerated conditions prior to administration to a patient.
2. This Court has held that proof of infringement of a method patent claim in the Hatch-Waxman Act context requires the label to induce a user to directly infringe the asserted claim.
3. There is no dispute that the now-approved FDA label for Rubicon's product directs the product to be stored at temperature, and optionally can be temperature.

This was known to Metacel at least as early as the filing of the Answer and production of the ANDA at or near the same time. But instead of dismissing the case, Metacel has resisted Rubicon's efforts to expedite resolution of the litigation because it knew that FDA would not issue Final Approval of Rubicon's product until

at least the conclusion of the litigation at the district court. As Rubicon's ANDA was a First-to-File ANDA related to Metacel's brand product Ozobax®, Metacel attempted to help itself to the 30-month stay of litigation while this frivolous case prevented launch of Rubicon's ANDA product.

Now, instead of accepting the loss at the district court, Metacel has "doubled down" on its frivolous arguments and has thus invoked a *de novo* review of the district court's grant of Rubicon's motion for summary judgment. Rubicon respectfully submits that such a review leads to the easy conclusion that summary judgment is proper. Rubicon further submits that this is an important case only in that there is no reason to endanger the well-established precedent that protects an ANDA filer from induced infringement claims where the label provides no support for the allegation that direct infringement is encouraged. Metacel's attempts to further delay this matter, as well as its implicit attempt to turn over such well-settled Hatch-Waxman inducement cases, should be soundly rejected.

## STATEMENT OF THE CASE

### The '502 Patent

Appellant Metacel's invention involves a specific formula for making an oral solution of baclofen, a known drug previously discovered by others, and previously approved and used by others for the treatment of spasticity resulting from multiple sclerosis. Appx6267-6268. In developing its formulation, Metacel used citric acid

as a buffer, which was found to interact with baclofen and form a specific impurity. Metacel tested for this impurity and found that its oral solution product was more stable in refrigerated conditions. Appx6268-6271. Thereafter, Metacel applied for and was issued method patent 10,610,502 ("the '502 patent"), which contains two claims. Independent claim 1 states as follows:

> A method of relaxing muscles or treating spasticity in a subject in need thereof comprising administering to the subject an effective amount of an aqueous oral solution comprising (i) baclofen, (ii) a buffer comprising citric acid, a salt of citric acid, or any combination thereof, and (iii) optionally one or more preservatives, wherein prior to the administration, the amount of 4-(3-carboxymethyl)-3-hydroxy-2,5-dioxopyrrolidin-1-yl)-3-(4-chlorophenyl) butanoic acid in the oral solution is determined to be below a threshold level and the oral solution is stored after the determination, but prior to the administration, at from about 2 to about 8° C.

Appx6271.

Dependent claim 2 differs only in specifying the threshold level of the impurity to be 0.2%. Appx6271.

The three important limitations in the '502 patent are referred to by the district court as (1) the Buffer Limitation; (2) the Impurity Limitation and (3) the Fridge Limitation. Appx6012.

There is no dispute (and there never has been) each of these claim elements must be met in order for Metacel to meet its burden of proving infringement. *See*

*e.g., Cross Meds. Prods. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005) (noting the well-worn standard for proving an accused product infringes a patent by demonstrating the accused product meets "each and every limitation set forth in a claim" by a preponderance of the evidence (internal quotation and citation omitted)). There is also no dispute that since the '502 patent only has method claims, Metacel cannot establish direct infringement by Appellee Rubicon as a matter of law. Instead, Metacel must show that Rubicon has induced infringement by others with an actual, specific intent to cause the acts which constitute the infringement. *Warner-Lamber Co. v. Apotex Corp.*, 316 F.3d 1348, 1363-4 (Fed. Cir. 2003) ("Specific intent and action to induce infringement must be proven")[1]. This requirement necessarily requires proof of induced infringement of each and every claim element, including the Buffer Limitation, the Impurity Limitation and the Fridge Limitation.

**Rubicon's ANDA and Label – The Material Facts**

Rubicon submitted ANDA No. 214445 to the FDA seeking approval for a generic version of Metacel's Ozobax ® product. Appx6013. FDA granted Rubicon's ANDA Tentative Approval on March 13, 2023, in the form produced by Rubicon in this litigation, with the only reason for "Tentative" vs. "Final" Approval being the existence of the suit at the district court. Appx5987-5993.

[1] Metacel has not attempted to proffer a theory of contributory infringement.

Unlike Metacel's product, Rubicon's product did not use [redacted] acid as a buffer and, therefore, did not form and was not required to test for the claimed impurity. Appx629-631. Rubicon's product was found to be stable both at [redacted] and in [redacted] conditions and was, therefore, not required to be [redacted] by FDA. Appx696-717, 602-603, 623, 600.

With respect to the Fridge Limitation, Rubicon's ANDA contains proposed labeling that instructs downstream users with respect to storage conditions in two places. There is a container label that goes on the outside of the product itself, and Rubicon's ANDA at section 1.14.1.2 contains a depiction of this "box label" which includes the following instruction for storage at [redacted]:

> Store at [redacted] to [redacted] ([redacted] to [redacted]); excursions permitted to [redacted] to [redacted] ([redacted] to [redacted]) [See USP Controlled [redacted]. It can also be stored at 2°C to 8°C (36°F to 46°F).

Appx602-603.

Rubicon's ANDA at section 1.14.3.1 also describes the proposed package insert (the "insert label") that will go with the product, which provides the very same storage instructions to downstream users as follows:

**16.2 Storage and Handling**

Store at [redacted] to [redacted] ([redacted] to [redacted]); excursions permitted to [redacted] to [redacted] ([redacted] to [redacted]) [See USP Controlled [redacted]]. Product can also be stored at 2°C to 8°C (36°F to 46°F).

Appx623.

Thus, both Rubicon's box label and insert label instruct users to store Rubicon's product at [redacted] while also noting that the product optionally can be stored [redacted]. Moreover, Rubicon's ANDA clearly states that the box label at ANDA section 1.14.1.2 and the insert label at ANDA section 1.14.3.1, replicated herein, constitutes the "complete labeling information" for Rubicon's ANDA product. Appx600.

**The Litigation at the District Court**

This action was filed on October 29, 2021. Appx37-47. Rubicon filed its Answer on January 21, 2022, denying infringement and produced its ANDA on or about the same day. Appx48-58, Appx94.

A scheduling conference was held on March 24, 2022, and the Scheduling Order was entered on April 1, 2022. Appx19-20. Under the Scheduling Order, Rubicon was given the opportunity to move for leave to file a motion for summary judgment after July 18, 2022, which was after Metacel was to serve its infringement contentions and the same day as the parties were to exchange preliminary constructions of any claim terms in need of court construction. Appx59-64. Despite Metacel bearing the burden of proof on the issue, Rubicon was required to serve its

non-infringement contentions first and did so on April 20, 2022. Appx570-595. In its contentions, Rubicon contested direct, indirect, induced and contributory infringement, detailing the legal standards that Metacel would need to meet to sustain a claim. Appx574-578. Rubicon produced a claim chart separating out the specific claim elements that it contended were not infringed and this chart included an explicit identification of the Fridge Limitation as not infringed. Appx592.

Metacel served its infringement contentions on June 21, 2022, which was the first time in the litigation that Metacel was required to detail its infringement contentions for each claim element. Appx377-413. With respect to the Fridge Limitation specifically, Metacel identified the limitation as a separate element required to maintain an infringement case and simply mischaracterized the information in Appellee Rubicon's ANDA label, stating only that: "Rubicon discloses that the oral baclofen solution is stored at 2-8°C (*see e.g.* RUB000087)." Appx390. Metacel did not make any further factual or legal argument pertaining to its theory of infringement. Appx377-413. Thus, from the outset, Metacel's entire theory of infringement was premised on a clear misstatement regarding Rubicon's ANDA label.

On July 27, 2023, Rubicon filed its Motion for Leave to File its Motion for Summary Judgment of Non-Infringement. Appx65-68.

In its brief in support of the Motion for Leave, Rubicon stated as follows:

> The single patent in dispute, U.S. Patent 10,610,502 ("the '502 patent"), has two claims. The claims are method claims with both requiring three action steps, in sequential order:
>
> 1. A determination that the oral solution is below a threshold level for a specific impurity.
> 2. Subsequent storage of the oral solution in refrigerated conditions.
> 3. Administration of the oral solution containing at least the active ingredient and a buffer comprising citric acid, a salt of citric acid, or any combination thereof.
>
> Rubicon's ANDA does not provide for testing for the specific impurity, permits storage of the oral solution at temperature and does not contain a buffer comprising chemical acid, a salt of chemical acid or any combination thereof.
>
> Accordingly, Rubicon's ANDA product cannot be found to literally infringe, directly or indirectly, the claims of the '502 patent.

Appx71.

Rubicon also attached its Brief in Support of the Motion for Summary Judgment, which detailed its position on the Fridge Limitation, including the references to the label, and the case law which clearly establishes that the label does not support a claim for induced infringement. Appx85-127.

The district court denied without prejudice Rubicon's motion for leave to file its motion for summary judgment at that time, as Metacel had raised a claim construction issue relevant only to the Buffer Limitation. Appx172-174.

On February 1, 2023, the district court entered the stipulated order on the Buffer Limitation claim term. Appx513-516. Thereafter, on February 10, 2023, Rubicon filed its Motion for Summary Judgment, as it was permitted to do. Appx517-520. Rubicon's motion papers were substantially identical to the papers

attached to the Motion for Leave. Appx81-142, Appx517-802. Specifically, Rubicon cited the ANDA label as above and the controlling case law on which summary judgment was ultimately granted, arguing that the Fridge Limitation could not be met as a matter of law. Appx545-553. In its opening brief, Rubicon also argued for summary judgment on the additional limitations of the ’502 patent – the Buffer and the Impurity Limitations – and still contends these limitations are not met. Appx557-566.

In its response brief and supporting declaration of its expert, Metacel ignored Rubicon’s ANDA label that will accompany the product instructing storage at temperature [redacted] and pointed only to the non-public portions of the ANDA to assert there was a genuine issue of material fact with respect to induced infringement of the Fridge Limitation. Appx5931-5971, at Appx5953-5954. Notably, in its response brief, Metacel made no argument under Fed. R. Civ. P. 56(f) that a continuance was needed and made no attempt to (and in any event could not) meet the detailed standards for such relief. Appx5931-5971. Also notably, Metacel made no argument in its opposition briefing that the Fridge Limitation argument should be stricken, or waived or forfeited, or somehow was unworthy of consideration due to a claimed deficiency of Rubicon’s non-infringement contentions. Appx5931-5971.

In its Reply Brief, Rubicon narrowed its motion for summary judgment in the interest of clarity and expediency to urge consideration only of the failure to meet the Fridge Limitation. Appx5972-5983.

On July 7, 2023, the district court granted Rubicon's motion for summary judgment of non-infringement. Appx6011-6022. The district court properly held that in determining whether Rubicon's ANDA could possibly infringe the '502 method patent, the appropriate inquiry is whether the proposed label induces a use of the ANDA product that directly infringes those claims. Appx6015. *HZNP Medicines LLC v. Actavis Labs. UT, Inc.,* 940 F.3d 680 (Fed. Cir. 2019) at 699. The district court rejected Metacel's arguments pertaining to other portions of the ANDA and the declaration submitted by Dr. Savello on the grounds that such arguments were factually and legally insufficient to create a genuine issue of material fact on the Fridge Limitation issue. Appx6016. The district court held that the label references cited by Rubicon herein included the storage instructions provided to downstream users and established as a matter of law that Rubicon would not induce infringement of the Fridge Limitation. Appx6018.

Metacel thereafter moved for reconsideration of the Order granting Rubicon's motion for summary judgment of non-infringement, raising new arguments that the district court grouped into two categories: (1) that Metacel was not on notice or did not have the opportunity to brief the Fridge Limitation issue; and (2) that the district

court overlooked or misinterpreted evidence supporting the existence of a material fact to be tried. Appx6025, Appx7. The district court denied Metacel's motion for reconsideration on August 31, 2023. Appx4-14.

The district court rejected Metacel's argument that it was not given proper notice of Rubicon's Fridge Limitation on the grounds that it was (a) factually untrue and (b) because Metacel's argument was untimely and legally insufficient. Appx7. The district court held that Rubicon's Infringement Contentions placed Metacel on proper notice of the Fridge Limitation issue as it specifically identified the Fridge Limitation as part of the claim elements that were not infringed and specified problems with any claim of direct or indirect infringement of that limitation. Appx8. The district court also held that Rubicon's Motion for Leave to file its motion for summary judgment placed Metacel on adequate notice that it intended to assert the failure to meet the Fridge Limitation as a basis for summary judgment. Appx8. The district court also noted that Metacel improperly raised this issue for the first time on the motion for reconsideration and further rejected the frivolous argument criticizing the brevity of Rubicon's opening brief on the Fridge Limitation issue. Appx7, Appx9.

The district court also rejected the arguments attempting to raise a question of material fact regarding the inducement issue, holding that Rubicon's label does not "lack clear guidance" and unambiguously instructs downstream users to store the

ANDA product at temperature. Appx11. The district court considered and rejected the new arguments contained in Metacel's expert declaration and referring to the non-public portions of the ANDA and correctly concluded that such evidence failed to establish a genuine issue of material fact to be tried pertaining to the Fridge Limitation. Appx10-13. Accordingly, the district court denied Metacel's Motion for Reconsideration and entered judgment in favor of Rubicon.

This appeal followed.

**Metacel's Recitation of Non-Material Facts**

In Metacel's response to the motion for summary judgment, in its motion for reconsideration, and even still in this appeal, Metacel has variously introduced facts that are legally insufficient to meet its burden of proving infringement of the Fridge Limitation. These non-material facts are addressed in this section.

Metacel references section 1.14.1.5 of the ANDA that represents a Q&A section between FDA and the ANDA applicant. Appx1985. There is no indication whatsoever, and Metacel argues none, that this section is ever provided or even is accessible to the downstream user. Instead, the label sections set forth by Rubicon above and in its district court briefing are represented by the ANDA to comprise the complete labelling information. Appx602-603, Appx623, Appx600.[2]

---

[2] Ironically, Metacel accuses Rubicon of relying on attorney argument (*see* Metacel Br. at p. 5), yet Rubicon's position is premised on the ANDA label that will be

Moreover, as the district court correctly noted, to which Metacel does not respond in its opening brief, Metacel misrepresents the breadth of the non-public FDA Q&A page it points to as evidence of inducement. Appx10. In that section, the differences between the storage instructions between Metacel's brand product and Rubicon's ANDA product were noted, expressly including the disclosure that temperature was optional. Appx10-11, 1985. As the district court correctly noted to which Metacel has made no response, the only statement that there is no difference between the two products pertained to the specific temperature of temperature when the products are temperature if they are temperature. Appx11, Appx1985.

Metacel relies upon the submission of its expert, Dr. Savello, in an effort to create a genuine material issue of fact where none exists. The crux of Dr. Savello's submissions are speculations that the downstream user would be confused by either the non-public ANDA section referenced above or by the permissive language of the actual ANDA label provided to the downstream user. Appx5925-5926, Appx6553. Notably, Dr. Savello's speculative conclusion is that the downstream user would then turn to Metacel's own brand label, which requires refrigeration, and would

provided with the commercially available product. Appx602-603, Appx623, Appx600. By contrast, Metacel ignores Rubicon's packaging and label, and premises its argument on non-public portions of Rubicon's ANDA submission, while making no effort to support its attorney argument with any proof that anyone would be able to access the information, or that such access is provided by Rubicon to the downstream user.

thereby be induced (by Metacel's label) to temperature. Appx6553. As noted above, the district court considered this argument and found the premise incorrect and further found it to be legally insufficient to create a genuine issue of material fact as to Rubicon's inducement of infringement of the Fridge Limitation. Appx11-13.

Metacel also relies on portions of the deposition of Rubicon witness, Dr. Ashwini Gadkari. Metacel Br. at p. 14-16. Dr. Gadkari was Rubicon's 30(b)(6) witness only with respect to the research and development of the product and the technical aspects of the product. Appx5598-5599[3]. Her job title was General Manager Formulation Development. Appx5607-5608. Accordingly, Dr. Gadkari testified affirmatively that she was not aware how an end user would view the storage statements that she was shown in the deposition. Appx5762. Dr. Gadkari was not shown the box or insert label, but instead was only shown the page from the FDA Q&A. Appx5756.

And even as to that Q&A, Metacel misrepresents Dr. Gadkari's testimony, choosing to cherry-pick a statement out of context and ignore her fulsome explanation that clearly supports Rubicon's non-infringement position, further underscoring Metacel's bad faith in maintaining this litigation and pursuing this appeal. Metacel Br. at p. 16. Dr. Gadkari's testimony continued from the truncated

[3] Rubicon also provided a different 30(b)(6) witness on regulatory topics, but she was asked no questions about the label or the FDA Q&A page.

quote provided by Metacel and fully explains the difference between Rubicon's and Metacel's storage conditions: "Rubicon's product is stable at controlled temperature temperature, however, it can also be stored at 2 to 8 degrees centigrade, and that is per the requirement of the FDA." Appx5758. Dr. Gadkari continued to explain that "it is the requirement of FDA that your label should be same as that of the reference listed drug. However, Rubicon's product is stable at controlled temperature, but as per the FDA's recommendation, . . . the statement stating that it can be stored at 2 to 8 degrees should also be a part of the label in addition to the storage at controlled temperature. So at -- it is as per the FDA's requirement to have the same condition as that of RLD." Appx5758-5759.

Metacel's statement in its brief that "Dr. Gadkari testified that Defendant's Product would be stored at 2 to 8°C" is entirely fabricated.

## STANDARDS OF REVIEW

The district court's granting of Appellee Rubicon's motion for summary judgment of non-infringement is reviewed *de novo*. *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304 (Fed. Cir. 1999).

In determining the appropriate standard for reviewing denials of motions for reconsideration, the Federal Circuit applies the law of the regional circuit, in this case the Third Circuit. *See Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1367 (Fed. Cir. 2014) (addressing the appropriate standard). Thus, the Court

reviews the district court's denial of Metacel's motion for reconsideration for abuse of discretion. *Id.*

To the extent any of Appellant Metacel's other arguments rise to the level of a reversable issue, they are reviewed for clear error. *Shire LLC v. Amneal Pharms., LLC,* 802 F.3d 1301, 1306 (Fed. Cir. 2015). Rubicon contends, however, that since the *de novo* review of the grant of summary judgment supports affirmance, there is no reversable issue remaining.

With respect to the review of summary judgment of non-infringement, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only "facts that might affect the outcome of the suit under the governing law" based on the operative substantive law are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is only genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

When considering a motion for summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "The mere existence of a scintilla of evidence" in support of the opposing party's position is insufficient to preclude summary judgment." *Id.* at 252. While the court must view any inferences

drawn from the underlying facts "in the light most favorable to the party opposing the motion," once the moving party has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushista Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Rather, the non-moving party "must come forward with 'specific facts showing there is a genuine issue for trial." *Id.* at 587 (quoting Fed. R. Civ. P. 56(e).); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

Metacel has the burden to prove that each and every limitation of the claims is present in the accused product. *Bayer AG v. Elan Pharm. Res. Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). In the Hatch-Waxman context, by way of example, the factual analysis is "straightforward" when the "ANDA directly addresses the question of infringement" and makes clear that a particular claim limitation is lacking." *Id.* at 1250.

## SUMMARY OF THE ARGUMENT

This case is controlled by clear Federal Circuit precedent established in *HZNP Medicines LLC v. Actavis Labs. UT, Inc.*, 940 F.3d 680 (Fed. Cir. 2019). The district court correctly applied this precedent, and the other Federal Circuit cases pertaining

to inducement of infringement in the Hatch-Waxman Act context, considered all of the evidence presented, including the new arguments raised on the motion for reconsideration, and applied the proper standard for deciding motions for summary judgment set forth in Fed. R. Civ. P. 56(a) and Supreme Court precedent in *Anderson v. Liberty Lobby, Inc.* and *Matsuhista Elec. Indus. Co. v. Zenith Radio Corp*.

Applying this precedent to the undisputable facts in this case, the district court determined that:

1. All of Appellant Metacel's method patent claims require storage of the oral solution in refrigerated conditions prior to administration to a patient.
2. Proof of infringement of a method patent claim in the Hatch-Waxman Act context requires the label to induce a user to directly infringe the asserted claim.
3. The FDA label for Appellee Rubicon's product directs the product to be stored at temperature, and optionally can be temperature.

*HZNP* is directly on point and controls this case. In *HZNP*, the Federal Circuit affirmed the district court's summary judgment of non-infringement of a method of use patent by the ANDA filer because the label did not encourage infringement of the claimed step where the label itself only described the infringing use as an option. *HZNP*, 940 F.3d at 702.

The Federal Circuit in *HZNP* considered and rejected the same efforts by the patentee brand to argue that the label allows for infringement and infringement would in fact occur, holding that such evidence does not establish that the "label instructs users to perform the patented method." *Id.*

The district court's application of the holding and reasoning in *HZNP* is unimpeachable. Metacel's arguments fail to materially distinguish the evidence and theories presented in this case and those discredited by the Federal Circuit in *HZNP*. In fact, the case for summary judgment of non-infringement in the present case is stronger than that affirmed by this Court in *HZNP*, in that Rubicon's label explicitly instructs use of the product in a clearly non-infringing way. Whereas Rubicon's label directs users to store its product at temperature, and, thus, teaches away from the asserted patent claims, the label at issue in *HZNP* offered no such instruction but presented the infringing use as a possible option. *See id.* at 700-01, 702.

*De novo* review of the district court's grant of summary judgment of non-infringement does not lead to a different result. Metacel offers no evidence of a genuine dispute of a material fact and does not offer a basis for disregarding settled Federal Circuit precedent on inducement of infringement of method claims in the Hatch-Waxman context.

Such a *de novo* review arguably supersedes Metacel's additional procedural arguments raised in its opening brief pertaining to the timing of summary judgment and the disclosure rules at the district court level. But even if these issues present a cognizable basis for disturbing the district court's judgment, they are reviewed for clear error, and no such error can be proven. The district court reviewed Metacel's complaint regarding the timing of summary judgment and Rubicon's disclosures and properly rejected them for being themselves improperly brought on a motion for reconsideration and for simply being incorrect. Metacel knew when it filed its complaint that it must prove satisfaction of the Fridge Limitation, which it cannot do. As set forth herein, the district court's decision to discredit these arguments was not clearly erroneous, and in fact was correct.

Accordingly, the district court should be AFFIRMED.

## ARGUMENT

### I. The District Court's Summary Judgment of Non-Infringement Should be AFFIRMED upon this Court's *de novo* Review

Under the structure of *Anderson v. Liberty Lobby*, the district court correctly found that Appellee Rubicon met its initial burden as movant of demonstrating there was no genuine dispute of material fact that Appellant Metacel could not prove an essential element of its case for which it bears the burden of proof. Thus, upon such a showing, Metacel bears the burden of coming forward with actual evidence sufficient to meet its burden of proof on the issue. To this day, Metacel has not and

cannot meet this burden. Accordingly, a *de novo* review of the entire record before this Court and applying settled Federal Circuit precedent leads to the inescapable conclusion that summary judgment of non-infringement is proper.

As set forth above, this case is indistinguishable from *HZNP*. To have any chance of proving infringement, Metacel must prove that Rubicon would induce infringement of the Fridge Limitation. Metacel does not challenge that premise. The storage instructions provided to the downstream user instruct storage at [redacted], and notes that the product *can* be stored in [redacted] conditions. Metacel does not challenge that this instruction is the sum total of storage instructions provided in the label. In *HZNP*, this Court held that a label presenting that infringing use as a possible option did not present a genuine issue of fact to be tried concerning induced infringement. *HZNP* at 700-01, 702. Metacel does not challenge the holding of *HZNP* which affirmed a grant of summary judgment of non-infringement just as here, or argue that *HZNP* is not good precedent.

Instead, trickled out in response to the motion for summary judgment, newly introduced on its motion for reconsideration, and even newly introduced on this appeal, Metacel offers only three pieces of evidence that it contends should also be considered in determining the inducement issue. None of this "evidence" gives rise to a genuine issue to be tried, such that Metacel, even given a second and third opportunity, fails to meets its burden on summary judgment.

First, the only evidence offered by Metacel in its response to the motion for summary judgment is the non-public section of the ANDA which it alleges, incorrectly, would cause confusion regarding the storage condition. Appx6016. The district court considered and properly rejected this evidence as woefully insufficient, and in fact states that "Metacel plainly misrepresents" the evidence, which the district court found to be (a) not ambiguous and (b) non-public. Appx10-11, Appx6016-6017. In its opening appeal brief, Metacel does not acknowledge the district court's consideration and rejection of this evidence, but instead contends the district court did not properly consider it, which is false.

Second, Metacel added an additional piece of "evidence" in its motion for reconsideration, with its expert contending that a confused downstream user would be induced by Metacel's brand label to temperature the product. The district court considered and properly rejected this evidence as unpersuasive. Appx11. The district court specifically held that Metacel's premise that the label would confuse the downstream user is wrong. Further, this evidence would fail to create a genuine issue regarding Rubicon's inducement of infringement as the expert is actually suggesting that Metacel's instructions would be the inducing statement, which of course could not be attributed to the conduct of Rubicon. In its opening appeal brief, Metacel does not acknowledge the district court's consideration and rejection of the

expert's statements, but instead contends the district court did not properly consider it, which is false.

Third and finally, Metacel adds yet another piece of "evidence" in this appeal, arguing for the first time that Rubicon's R&D witness casts some doubt on the inducement issue.[4] As set forth in the Statement of the Case above, Dr. Gadkari's testimony sheds no light on the information provided to the downstream user and adds nothing to the inducement issue. Metacel's conclusory and unattributed statement that she testified otherwise is false.

So with a full *de novo* review allowing for all of the piecemeal and untimely evidence brought on this appeal, summary judgment is warranted with the simple application of *HZNP* to Rubicon's label instructing storage at temperature, and optionally permitting temperature storage. To hold otherwise would be implicitly overruling *HZNP* as the label in this case is even more clear as it first directs the non-infringing action, and thereafter optionally permits the alternative action. Metacel does not suggest *HZNP* should be overturned and there is no justification for creating an upheaval of established law on which an entire industry relies.

[4] Metacel makes no attempt to justify inclusion of this new "evidence" from a deposition taken over a year ago. "It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal." *Ray v. Pinnacle Health Hosps., Inc.*, 416 F. App'x 157, 162 (3d Cir. 2010).

It is not just *HZNP* that supports Rubicon's position, but an entire body of well-settled inducement law in the pharmaceutical space that is in accord and would be disrupted if Metacel's view was endorsed. *See Glaxosmithkline LLC v. Teva Pharms. USA, Inc.*, 7 F.4th 1320 (Fed. Cir. 2021); *Vanda Pharms Inc. v. West-Ward Pharms. Int'l Ltd.*, 887 F.3d 1117 (Fed. Cir. 2018); *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 845 F.3d 1357 (Fed. Cir. 2017); *Ferring B.V. v. Watson Labs., Inc.*, 764 F.3d 1401, 1408 (Fed. Cir. 2014); to *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042 (Fed. Cir. 2010); *see also Grunenthal GmbH v. Alkem Labs. Ltd.*, 919 F.3d 1333, 1341 (Fed. Cir. 2019) (finding no inducement to infringe when label merely allowed for the possibility of infringement); *Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 630-34 (Fed. Cir. 2015) (same, noting, "The question is not just whether instructions describe the infringing mode but whether the instructions teach an infringing use of the device *such that* we are willing to infer from those instructions an affirmative intent to infringe the patent" (internal quotations and citations omitted)). Metacel either mischaracterizes or ignores this binding precedent and fails to articulate either any valid distinction or good-faith basis for overturning them, which is precisely the implication if Metacel gets its way on this appeal.

In *Vanda Pharms Inc.*, the Court held that to prove a claim of induced infringement, it must be established that the generic drug manufacturer possessed

the specific intent to encourage another's infringement. 887 F.3d at 1133. To prove specific intent, the patentee has to prove that either the label or some relevant evidence shows that the generic drug manufacturer "encourages, recommends or promotes infringement." *Id.* Metacel suggests that the district court did not apply this standard, which it clearly did, but Metacel further contends the district court's determination that the label was not ambiguous somehow shifted the summary judgment burden onto Metacel. Metacel always has the burden of proving its case, even in opposition to a motion for summary judgment, so the burden was not shifted. Rather, the district court merely pointed out, correctly, that Metacel failed to meet ***its*** burden of proferring triable evidence in light of the clear instruction in Rubicon's label to not infringe. With respect to *Vanda* and throughout Metacel's argument, Metacel conflates reasoned disagreement, to which the district court is entitled, with improper burden shifting. To the extent Metacel seeks to apply the holding as to the specific facts presented in *Vanda* to our present case, it is clearly distinguished inasmuch as the generic label in *Vanda* unambiguously directed users to follow steps claimed and protected by the patent there at issue (*see id.* at 1130-33) whereas no such facts are presented attributable to Rubicon's intent.

Metacel cites to *Ferring B.V. v. Watson Labs., Inc.*, 764 F.3d 1401, 1408 (Fed. Cir. 2014) for the general proposition that "an infringement determination is … based on consideration of all the relevant evidence" in conjunction with the ANDA

itself as reaffirmed in *Vanda* (887 F.3d at 1129) and *AstraZeneca* (633 F.3d at 1060). The district court correctly applied this principle by determining that Metacel's additional evidence was not relevant and did not detract from the undisputable fact that Rubicon's ANDA resolves the question of infringement through the unambiguous label. *Ferring* is helpful inasmuch as it reminds us that Metacel must prove infringement (*see* 764 F.3d at 1408 ("The plain language of [§271(e)(2)(A)] does not alter a patentee's burden of proving infringement by a preponderance of the evidence." (internal quotations omitted))), but it is clearly distinguishable on the basis that the ANDA specification in *Ferring* "does not resolve the question of infringement," whereas the ANDA specification in our case clearly, unambiguously and unequivocally does.

*Ferring* also reminds us that, when evaluating whether an ANDA infringes a patent, the focus is on the ANDA product that is to be sold, such as, in our case, Rubicon's product with ***<u>Rubicon's</u>*** proposed labeling. *See id.* at 1409 (holding the district court erred by focusing the infringement question on the uncoated cores of the allegedly infringing tablets when the "infringement evaluation is concerned only with the final, coated commercial tranexamic acid tablets for which [the alleged infringer] sought and was granted FDA approval to market as a generic treatment …"). Metacel's attempt to prove infringement by reference to ***<u>Metacel's</u>*** label instead of Rubicon's thus not only invites clear legal error but also underscores the

frivolous nature of Metacel's positions. It was not error for the district court to disregard Metacel's and its expert's infringement theory when it is premised on a deeply flawed understanding of the infringement analysis in the Hatch-Waxman context.

Notably, the *Ferring* court found no infringement because the record—including but not limited to the ANDA—failed to include data pertaining to the ANDA product to be sold, and the *Ferring* court explicitly discounted as irrelevant internal data from the alleged infringer that likewise did not provide evidence regarding the finished product. *See id.* at 1410. By attempting to deflect from Rubicon's ANDA product and the proposed label that will accompany Rubicon's ANDA product, Metacel asks the Court to completely overhaul the infringement analysis in Hatch-Waxman cases by favoring quack theories tied to irrelevant information over the trustworthy evidence Rubicon has submitted to FDA. As made perfectly clear in *Ferring*:

> The infringement determination is thus based on consideration of all the relevant evidence, and because drug manufacturers are bound by strict statutory provisions to sell only those products that comport with the ANDA's description of the drug, the ANDA itself dominates the analysis. ***In some cases, the ANDA specification directly resolves the infringement question because it defines a proposed generic product in a manner that either meets the limitations of an asserted patent claim or is outside the scope of such a claim.*** In cases in which the ANDA specification does not resolve the infringement question in the first instance, we have

> endorsed the district court's reference to ***relevant*** evidence, including biobatch data and actual samples of the proposed generic composition that the ANDA filer has submitted to FDA.

*Id.* at 1408-09 (internal quotations and citations omitted) (emphasis added).

Metacel next turns to *AstraZeneca LP v. Apotex, Inc.* for the general proposition that the district court may review relevant evidence outside of the ANDA product label to determine the ANDA applicant's intent. *See* Metacel Br. at p. 36; *See also* 633 F.3d at 1060 (holding uncontroversially that circumstantial evidence may establish intent). Rubicon does not contend that relevant evidence should not be considered and the district court did not refuse to consider such evidence. Rubicon instead contends that Metacel's theory that, contrary to extensive binding precedent, the Court should ***disregard*** Rubicon's label as clear and unambiguous evidence of Rubicon's intent invites legal error and is not only completely baseless but also utterly frivolous. Metacel's expert's theory that consumers would actually ignore Rubicon's label is incomprehensible and totally unsupported, and Metacel's aim to prove alleged infringement by Rubicon by reference to ***Metacel's*** own label is pure quackery. Metacel has not even attempted to provide this Court with the courtesy of an explanation that could remotely justify unraveling decades of clear-headed Hatch-Waxman precedent undercutting Metacel's positions. *See, e.g.*, *Glaxo Inc. v. Novopharm Ltd.*, 110 F.3d 1562, 1570 (Fed. Cir. 1997) ("Thus, … the patentee's burden of proving ultimate infringement is not met by the filing of the

ANDA. The relevant inquiry is whether the patentee has proven by a preponderance of the evidence that the alleged infringer will likely market an infringing product. What is likely to be sold, or, preferably, what will be sold, will ultimately determine whether infringement exists.")

*AstraZeneca* is distinguishable based on the fact that the generic label itself explicitly included information that would "necessarily" lead to infringement, a finding that was supported by FDA's own conclusions regarding the information in the label. See *id.* at 1056-61. Notably, *AstraZenca* reminds us that, in assessing infringement by reference to the product label, "[t]he pertinent question is whether the proposed label instructs users to perform the patented method." *Id.* at 1060.

Metacel next turns to the Court's recent decision on carve-out label practices in ANDA situations in *Glaxosmithkline LLC ("GSK")*. *GSK* did nothing more than follow the rule requiring the court to consider all relevant evidence of intent. *See* 7 F.4th at 1327 ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice" (internal quotations omitted")). Notably, unlike in the instant case, the patentee in *GSK* established that the ANDA label directed users to infringe the patent claims limitation by limitation, which distinguishes *GSK* from *HZNP* as well as the instant record on appeal, where Metacel has failed to demonstrate that Rubicon's label instructs users to infringe. Metacel's efforts notwithstanding, it cannot contort Rubicon's clear instruction to store its

product at temperature —thus, teaching ***away*** from infringement— into an instruction to temperature its product and, thus, infringe. Metacel's arguments attempting to do so are nakedly meritless and wasteful of the Court's and Rubicon's resources.

Furthermore, procedurally, the district court in *GSK* had effectively overruled a jury finding of inducement, which the district court was required to review under the "substantial evidence" standard. *See id.* at 1326. The Federal Circuit held that the district court erred in not applying the appropriate standard. *See id.* at 1330-31. The "substantial evidence" standard is not applicable here. In this case, Metacel must demonstrate genuine disputes of material facts that, when viewed in the light most favorable to Metacel, are nonetheless sufficient to establish a basis for finding infringement applying the correct evidentiary burden, i.e. preponderance of the evidence. *See Anderson,* 477 U.S. at 248.

Metacel next turns to the District of Nevada (*see* Metacel Br. at p. 37) wherein an expert's testimony was used to interpret a label that assisted the court in determining there was induced infringement, thus distinguishing itself from *HZNP* and the present case. *See Amarin Pharma, Inc. v. West-Ward Pharms. Int'l Ltd.*, 407 F. Supp. 3d 1103, 1112 (D. Nev. 2019). The *Amarin* case distinguished itself from *HZNP* on the grounds that the expert in *HZNP* had presented an implausible interpretation of the asserted patent claims, "whereas here, Plaintiffs' expert

testimony offers a plausible interpretation of the labelling that suggest the Court could find induced infringement." *Id.* at 1112. *Amarin* is, thus, clearly distinguishable for this very reason. Like the expert in *HZNP,* Metacel's expert here offers an ***implausible*** theory for consumers ignoring Rubicon's clear instruction to store its product at temperature. Indeed, in finding that it could not grant summary judgment of non-infringement, the Nevada District Court in *Amarin* credited plaintiffs' expert testimony, which the court found to be "***not inconsistent with the proposed labeling***" (emphasis added) and supportive of induced infringement. *Id.* at 1111. In this case, Metacel aims to rely on irrelevant extrinsic evidence that squarely contradicts Rubicon's unambiguous product label.

Metacel references *Janssen Pharms., Inc. v. Mylan Labs. Ltd.*, C.A. No. 20-CV-13103, 2023 U.S. Dist. LEXIS 90278 (D.N.J. May 23, 2023) apparently for the uncontroversial proposition that just because a product has substantial non-infringing uses, [the ANDA applicant] may still be held liable for induced infringement" where it recommends infringing acts. *Id.* at *15 (stating that "[t]here is no legal or logical basis for limiting induced infringement liability where the proposed label has substantial noninfringing uses.") Of course, *Janssen* is readily distinguishable on the grounds that the ANDA label there at issue "expressly instruct[s]" users "to infringe the Asserted Claims," (*see id.* at *24) whereas Rubicon's label expressly instructs users to not infringe.

Metacel's efforts to upend established precedent on induced infringement cases becomes even more clear in view of its reliance on the copyright decision in *MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) for the proposition that it is enough for Metacel to show that Rubicon's label instructs *how* to engage in an infringing use (*e.g.*, presumably, any mention of temperature as an option at all). Metacel Br. at p. 41. Such a ruling based on this copyright decision would reverse the ANDA label-based patent infringement holding of *HZNP* and the similar cases above by replacing it with a new standard completely devoid of proof of the specific intent to induce infringement required by settled law. Metacel's argument ignores the reality that Rubicon's label teaches away from infringement. This Court's *HZNP* decision, which post-dates the copyright decision set forth in *Grokster* and is in no way inconsistent with *Grokster*, precludes a finding of infringement hinged on expert testimony that squarely contradicts Rubicon's product label storage instructions. *Grokster* has no application in this case.

Metacel finally references *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 845 F.3d 1357 (Fed. Cir. 2017) for support of its burden shifting argument described above. Metacel Br. at p. 44. The district court's finding that Rubicon's label instructs users to store Rubicon's product at temperature reflects a common sense reading of plain English. Its conclusion is unassailable. Metacel's arguments relying on unsupported expert opinion that squarely contradicts Rubicon's

instructions are legally erroneous and frivolous. Notably, the *Eli Lilly* decision reminds us that it is not sufficient that the ANDA product's label describe an infringing use, "but whether the instructions teach an infringing use *such that* we are willing to infer from those instructions an affirmative intent to infringe the patent." *Id.* at 1368 (emphasis in original). In our case, Metacel pins its hopes on some (unidentified) ambiguity in Rubicon's storage instructions, but *Eli Lilly* also reminds us that "'vague' instructions that require one to 'look outside the label to understand the alleged implicit encouragement' do not, without more, induce infringement." *Id.* at 1369. Thus, *Eli Lilly* further bolsters Rubicon's position that Metacel's arguments are frivolous. Notably, the *Eli Lilly* court found that the ANDA product's label expressly induced infringement. *Id.* at 1364-69.

The opposite is true here, where Rubicon's label induces non-infringement, such that no genuine issue of material fact was shown to prevent entry of summary judgment of non-infringement.

Perhaps just as noteworthy as the cases Metacel cites and discusses are the *Grunenthal* and *Takeda* decisions cited by the district court and totally ignored by Metacel. As in this case, the relevant holding in *Grunenthal* turned on "whether [the alleged infringers] have the specific intent, based on the contents of their proposed labels, to encourage physicians to use their proposed ANDA products" for an infringing use, namely "to treat polyneuropathic pain." 919 F.3d at 1339. Although

the *Grunenthal* court agreed that the labels at issue could be used by practitioners in an infringing way, that fact was insufficient to establish the intent required to find induced infringement where the labels "do not implicitly or explicitly encourage or instruct users to take action that would inevitably lead to" infringement. *Id.* at 1340. The *Grunenthal* decision expressly distinguished the facts then before the court from those before the court in the *AstraZeneca* decision discussed *supra*, where "the defendant proceeded with a plan to distribute the generic drug knowing that its label posed infringement problems," including that "the instructions in the DOSAGE AND ADMINISTRATION section of the label 'would inevitably lead some consumers to practice the claimed method." *Id.* Thus, *Grunenthal* is on point, and, as noted previously, the *AstraZeneca* decision is readily distinguishable from the instant case based on the very same analysis set out in *Grunenthal*.

The *Takeda* decision ignored by Metacel leads to the same conclusion. The plaintiff in *Takeda* accused the defendant of induced infringement based on language in the generic product label instructing patients to consult with their physicians if stricken by the condition for which the patent at issue claimed a method of treatment. *See* 785 F.3d at 627 (noting that the patent claims at issue were directed to treatment of gout flares). The labels at issue advised patients having gout flares to consult with the patients' physicians, and the plaintiff argued that this instruction would inevitably lead to infringement because at least some physicians would prescribe the

generic product for the treatment of the flares. *See id.* at 627-29. The Federal Circuit held that the allegedly problematic statements in the labels were insufficient to establish the intent required to induce infringement and, thus, affirmed the district court's denial of a preliminary injunction. As the *Takeda* court then explained:

> [Induced] [i]nfringement only exists where there is evidence that goes beyond a product's characteristics or the knowledge that it may be put to infringing uses. Inducement can be found where there is evidence of active steps taken to encourage direct infringement, which can in turn be found in advertising an infringing use or instructing how to engage in an infringing use. But such instructions need to evidence intent to *encourage* infringement. The question is not just whether instructions describe the infringing mode, but whether the instructions teach an infringing use of the device *such that* we are willing to infer from those instructions an affirmative intent to infringe the patent. Merely describing an infringing mode is not the same as recommending, encouraging, or promoting an infringing use, or suggesting that an infringing use should be performed.

*Id.* at 1682-83 (internal quotations, citations and corrections omitted; emphasis in original). As the *Takeda* court concluded,

> [I]n the Hatch-Waxman context where, as here, it is alleged that the drug label induced infringement by physicians[,] [t]he label must encourage, recommend, or promote infringement. The mere existence of direct infringement by physicians, while necessary to find liability for induced infringement, is not sufficient for inducement. … [I]t is well-established that mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven.

*Id.* at 1683 (internal quotations and citations omitted).

Metacel's choice to ignore *Grunenthal* and *Takeda* and focus instead on baseless arguments those cases and others cited by the district court discredit may make sense strategically for a pharmaceutical company seeking to retain its monopoly over a therapeutic treatment, but it is wholly improper as a matter of jurisprudence. Rubicon, thus, respectfully submits that Metacel's argument choices underscore its bad faith in bringing and maintaining this frivolous case and appeal.

## II. The District Court's Denial of Metacel's Motion For Reconsideration Based on Alleged Procedural Errors should be AFFIRMED

With no hope of meeting its burden to show a genuine issue to be tried on its infringement case, Appellant Metacel next turns to the procedural issues raised in its motion for reconsideration, for which it must show the district court abused its discretion in denying. *Golden Bridge*, 758 F.3d at 1367. Essentially, Metacel argues that the district court erred by considering the Fridge Limitation on summary judgment, claiming surprise (but not prejudice) that it was required to prove its infringement case. Metacel's argument is incorrect -- factually, procedurally and legally.[5]

[5] At the outset, Appellee Rubicon notes that the issues raised in this section are superseded by the *de novo* determination that Metacel cannot prove infringement, even considering the new record evidence submitted on this very appeal. Metacel certainly by now can be held to have no chance of proving its infringement case. In this section, Metacel is hoping that it would be excused from the burden of being plaintiff through some sort of unjustified forfeiture imposed on Rubicon.

Metacel's argument is incorrect factually because Metacel was placed on ample notice in Rubicon's non-infringement contentions and in Rubicon's motion for leave to file the initial summary judgment motion, as set forth in the Statement of the Case above. Further, from the outset of this case and every step of the way since then, Metacel bore and continues to bear the burden of proving infringement, and Metacel acknowledged in its own infringement contentions that the Fridge Limitation was an essential element of its patent claims. Appx390. The district court evaluated Metacel's claims of surprise in the motion for reconsideration, and ruled that Metacel was provided sufficient notice. Metacel does not meet its burden of establishing that the district court abused its discretion in making this ruling and in fact does not even acknowledge the district court's analysis.

Metacel's argument is incorrect procedurally because it complains of surprise as if it is a *de novo* issue, yet the appeal on this issue is from a denial of a motion for reconsideration, which has a different standard not addressed by Metacel, including the prohibition against raising new arguments which could have but were not raised during the briefing of the underlying motion.

Further, Metacel was required procedurally to have raised the need for further discovery under Fed. R. Civ. P. 56(f) or have moved to strike the argument due to an alleged violation of the Local Patent Rules, at the time of the original decision on summary judgment. Metacel was free to invoke Rule 56(f) and attempted to meet

its requirements, but chose not to do so. Metacel's failure means these issues need not be considered on this appeal, as articulated by *United States v. Komlo*, 802 F. App'x 676, 679 (3d Cir.)(Jan. 29, 2020) (holding appellant's failure to raise an argument in response to summary judgment until moving for reconsideration resulted in forfeiture of the argument and, thus, affirming district court's decision to "decline[] to entertain Komlo's belatedly articulated argument" (internal quotations omitted).)

Metacel's argument is incorrect legally as it imposes a standard of review by this Court of the district court's sound discretion to manage its cases. As set forth in *Astellas United States LLC v. Hospira, Inc.*, "[T]he district court has considerable discretion in matters regarding . . . case management." Civ. App. No. 2022-1878, 2022 U.S. App. LEXIS 35933 at *19 (Fed. Cir.)(Dec. 30, 2022) . *ZF Meritor, LLC, v. Eaton Corp.* is also instructive and controlling, holding that "the District Court has considerable discretion in matters regarding … case management, and a party challenging the district court's conduct of discovery procedures bears a 'heavy burden.'" 696 F. 3d 254, 297 (3d Cir.)(2012). Further, *In re Fine Paper Antitrust Litigation*, also from the controlling Third Circuit held that "matters of docket control and conduct of discovery are committed to the sound discretion of the district court. We will not interfere with a trial court's showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant. Similarly, we

will not upset a district court's conduct of discovery procedures absent a demonstration that the *court's* action made it impossible to obtain crucial evidence, and implicit in such a showing is proof that more diligent discovery was impossible." 685 F.2d 810, 817-18 (1982) (internal citations and quotations omitted; emphasis in original).)

Generally, Metacel cites no legal authority for what is, effectively, a burden-flipping argument. Metacel's argument ignores the fact that, from the outset of the underlying action, Metacel had the burden of proving that Rubicon's product meets each and every limitation of the asserted claims. Metacel invites legal error (without the courtesy of legal authority) in contending Rubicon had a burden to affirmatively assert and prove non-infringement. Furthermore, Metacel had ample notice of Rubicon's positions for the reasons set out in the district court's decision denying reconsideration.

The cases that Metacel does cite do not apply in this situation and certainly do not support Metacel's request to be excused from the burden of proving its case. The cases it cites might apply if, for example, Rubicon refused to produce the ANDA, but that did not occur, and Metacel cites no authority for the position it proffers that Rubicon had some burden of asserting and proving non-infringement. The cases Metacel cites do not flip the burden to the alleged infringer to disprove infringement.

Metacel first references *Par Pharm., Inc., v. QuVa Pharma, Inc.*, Civil Action No. 17-6115, 2018 U.S. Dist. LEXIS 20775 (D.N.J. Feb. 8, 2018). Metacel Br. at p. 48. At issue in the *Par* case was whether Par, which like Metacel in this case had the burden of proof, had adequately disclosed a trade secret upon which its legal claim was premised. *See id* at *15-*22. Thus, *Par* is readily distinguishable. Metacel has the burden of proving infringement, and its best evidence that Rubicon's ANDA product will meet the claimed Fridge Limitation is unsupported expert opinion that squarely contradicts the product label for Rubicon's product. Metacel knew from the outset of the case that it would be required to prove satisfaction of the Fridge Limitation, and it knew at least since having received Rubicon's ANDA that it would be unable to do so. *Par* simply does not require Rubicon to have put Metacel on notice of its burden to prove infringement.

Next Metacel references *Seahorse Oceanside Apartments Condo. Ass'n v. Homesite ins. Co.*, 446 F. Supp. 3d 1097 (S.D. Fla. 2020). Metacel Br. at p. 48. *Seahorse*, like *Par*, involved a plaintiff's failure to provide information in discovery key to proving the claims that it brought. *See id.* at 1105-10. Therefore, it is inapposite except to the extent that it stands for the proposition that a plaintiff who fails to adduce appropriately disclosed record evidence that meets its burden of proving its legal claims cannot survive a motion for summary judgment.

Metacel includes *Cunningham v. Fulton County, Ga.*, 785 F. App'x 798, 803-04 (11th Cir. 2019) in a string cite with *Seahorse*. Metacel Br. at p. 48. Like *Par* and *Seahorse*, this case in relevant part concerned a plaintiffs' failure to disclose evidence supporting the plaintiffs' claim, in this case for breach of contract. I*d.* at 803-04. Thus, *Cunningham* is readily distinguishable. Unlike the plaintiffs in *Cunningham* (and *Par* and *Seahorse*), Rubicon, the alleged infringer, has no burden of proving non-infringement. Moreover, all of the information on which Rubicon relies to support its non-infringement position was produced to Metacel early on when Rubicon produced Rubicon's ANDA.

Metacel's reliance on *Tritek Techs., Inc. v. United States*, 63 Fed. Cl. 740, 743 (2005) is also misplaced because this case affirmed the district court's decision applying its rules of disclosure because the lower court had broad discretion in controlling discovery in the cases pending before them. The same broad discretion crashes Metacel's hope for a free pass on proving its case.

Similarly, *King v. Verizon New Jersey, Inc.* and *Janssen Pharm., Inc. v. Mylan Labs. Ltd.* are lower court decisions wherein the district court exercised its discretion to manage its rules, just as here where the district court considered the record and found that Metacel was on notice and was not prejudiced, and such findings are strongly supported in the record. *See King*, 2023 WL 5817126 (D.N.J. Sept. 6, 2023) and *Janssen*, 2023 WL 3605733 (D.N.J. 2023). Metacel's reliance on such cases

underscores its willful disregard of its burden as a patent infringement plaintiff as well as its burden to seek reversal of a motion for reconsideration on appeal.

Metacel's reliance on *Graco Children's Products Inc. v. Kids II*, yet another district court case, is even more quizzical, as there the trial court held the alleged infringer was bound by admissions that a particular claim limitation was satisfied, the opposite of what happened here. *See* Civil Action No. 13-cv-1183, 2018 U.S. Dist. LEXIS 49865 (N.D.Ga.)(Mar. 26, 2018). Rubicon's contentions do the opposite, and placed Metacel on clear notice that Rubicon did not concede infringement of the Fridge Limitation, as the district court independently concluded.

Metacel cites another district court case in *Canon, Inc. v. Color Imaging, Inc.*, 227 F.Supp.3d 1303 (N.D.Ga.)(Dec. 14, 2016). Metacel Br. at p. 57. The district court in *Canon* reviewed the disclosures from the party and found them lacking, and of course there was no appellate review of this ruling. The district court in our case found no impropriety or prejudice on behalf of Rubicon, and so *Canon* is not analogous at all and provides no aid or comfort to Metacel's wild and improper request for issue preclusion on appellate review.

And finally, Metacel cites *Genentech, Inv. v. Amgen, Inc.*, in arguing that the district court's application of Local Patent Rule 3.6 was arbitrary, although it does not explain why the *Genentech* decision supports its position. Metacel Br. at p. 58. *See* 289 F.3d 761 (Fed. Cir. 2002). In *Genentech*, this Court affirmed the district

court's decision to not allow the patent enforcer, which had the burden of proving infringement, to amend its claim charts to include a doctrine of equivalents theory because it failed to demonstrate the requisite diligence under the local patent rules. This is the opposite of what Metacel is here requesting by seeking Federal Circuit reversal of the district court's determination of proper notice and lack of prejudice. Metacel never explains how our district court's decision could be considered arbitrary when it does nothing more than pay due respect to Metacel's burden of proving infringement.

Accordingly, Metacel's appeal of the issues raised in the motion for reconsideration should be rejected for being factually, procedurally and legally baseless.

## CONCLUSION

For the foregoing reasons, the district court's finding for Summary Judgment in favor of the Appellee Rubicon should be AFFIRMED.

Dated: March 13, 2024

Respectfully submitted,

*/s/ R Touhey Myer*

TIMOTHY H. KRATZ
GEORGE J. BARRY III
**KRATZ & BARRY LLP**
1050 Crown Pointe Parkway
Suite 500
Atlanta, GA 30338
(404) 341-6600
tkratz@kratzandbarry.com
gbarry@kratzandbarry.com

MICHAEL P. HOGAN
**KRATZ & BARRY LLP**
325 Chestnut Street, Suite 883, #259
Philadelphia, PA 19106
(404) 341-6600
mhogan@kratzandbarry.com

R TOUHEY MYER
**KRATZ & BARRY LLP**
800 N. West Street
Wilmington, DE 19801
(302) 527-9378
tmyer@kratzandbarry.com

*Counsel for the Defendant-Appellee, Rubicon Research Private Ltd.*

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-2386

**Short Case Caption:** Metacel Pharmaceuticals, LLC v. Rubicon Research Private Limited

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 10,042 words.

☐ the filing has been prepared using a monospaced typeface and includes ________ lines of text.

☐ the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 03/13/2024

Signature: /s/ R Touhey Myer

Name: R Touhey Myer

Save for Filing

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 2023-2386

**Short Case Caption:** Metacel Pharmaceuticals, LLC v. Rubicon Research Private Limited

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).
- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

The foregoing document contains 15 number of unique words (including numbers) marked confidential.

☑ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 03/13/2024 Signature: /s/ R Touhey Myer

Name: R Touhey Myer