No. 23-2386

# United States Court of Appeals for the Federal Circuit

METACEL PHARMACEUTICALS, LLC,
*Plaintiff-Appellant*,

v.

RUBICON RESEARCH PRIVATE LIMITED,
*Defendant-Appellee*.

Appeal from the United States District Court for the District of New Jersey in No. 2:21-cv-19463-EP-JRA, United States District Judge Evelyn Padin

**REPLY BRIEF OF APPELLANT**
**METACEL PHARMACEUTICALS, LLC**
**NON-CONFIDENTIAL**

ARNALL GOLDEN GREGORY LLP
Matthew D. Zapadka
Kevin M. Bell
2100 Pennsylvania Ave NW, Suite
350S Washington, DC 200037
(202) 677-4930

*Counsel for Plaintiff-Appellant*

April 10, 2024

Dated: April 10, 2024

Respectfully submitted,

*/s/* Matthew D. Zapadka

Matthew D. Zapadka
ARNALL GOLDEN GREGORY LLP
2100 Pennsylvania Ave NW,
Suite 350S
Washington, DC 200037
(202) 677-4930

*Counsel for Plaintiff-Appellant*

## TABLE OF CONTENTS

CONFIDENTIAL MATERIAL OMITTED. The material omitted on page 8 describes certain chemical elements of Appellee's patent; the material omitted on pages 3, 4, 5, 6, 7, 19, 20, 23, 24, 25 and 27 describe the temperature in which Appellee's product is stored.

**Page(s)**

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ iii

ARGUMENT ........ 1

I. The District Court's Arbitrary Enforcement of Rules Allowing Rubicon to Advance a Novel Non-Infringement Theory at Summary Judgment Manifestly Prejudiced Metacel and Warrants Reversal ........ 1

a. Manifest prejudice arose due to Rubicon's failure to identify its storage limitation theory in its non-infringement contentions along with the timing of discovery relative to summary judgment briefing, which arose due to Metacel's adherence to the district court's scheduling order. ........ 2

b. Rubicon characterized different storage conditions as the permissive condition at different times, demonstrating that Metacel could not have been on notice of Rubicon's non-infringement theory, that Rubicon's label was vague and ambiguous, and that genuine issues of material fact were and remain unresolved. ........ 5

c. Rubicon does not justify its unreasonably delayed identification of its dispositive non-infringement theory. ........ 6

d. Rubicon does not explain how its conclusory non-infringement contentions were sufficient to have put Metacel on notice of its non-infringement theory first conceived in Rubicon's reply MSJ brief. ........................................8

e. The case law supports the finding that the district court's enforcement of the Rules was arbitrary and capricious, thereby unfairly prejudicing Metacel. ...........................9

II. The District Court Erred by Resolving a Genuine Issue of Material Fact at Summary Judgment and further at the Motion for Reconsideration Stage..........................................18

III. The District Court Erred by Failing to Consider the Substantial Evidence Supporting Non-movant Metacel's Arguments Opposing Rubicon's Motion for Summary Judgment.........................................................................................20

a. Rubicon misconstrues Metacel's expert's opinion, which the district court failed to consider. ....................................20

b. The district court failed to consider evidence from Rubicon's own witness indicative of Rubicon's intent to induce infringement....................................................................26

IV. Rubicon's Other Procedural Arguments are Unconvincing, and to the Extent that Metacel Could Have Sought Relief Other Than What it Sought Below, Balancing the Prejudice to the Parties Clearly Favors the Relief Metacel Seeks on Appeal .......................................................28

V. This Case is Distinguishable from *HZNP*, *Grunenthal*, and *Takeda* ...............................................................30

CONCLUSION.........................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amarin Pharma, Inc. v. West-Ward Pharms. Int'l Ltd.*,
407 F. Supp. 3d 1103 (D. Nev. 2019) ..................25, 26

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ..................19

*Canon, Inc. v. Color Imaging, Inc.*,
227 F. Supp. 3d 1303 (N.D. Ga. 2016) ..................2, 13, 14

*Celgene Corp. v. Hetero Labs Ltd.*,
No. 17-3387, 2021 U.S. Dist. LEXIS 159262 (D.N.J. Mar. 29, 2021) ..................1, 2, 10, 11

*Celotex Corp. v. Cartrett*,
477 U.S. 317 (1986) ..................29

*Cunningham v. Fulton Cnty., Georgia*,
785 F. App'x 798 (11th Cir. 2019) ..................16

*Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*,
845 F.3d 1357 (Fed. Cir. 2017) ..................25

*Genentech, Inc. v. Amgen, Inc.*,
289 F.3d 761 (Fed. Cir. 2002) ..................10

*Glaxo, Inc. v. Novopharm, Ltd.*,
110 F.3d 1562 (Fed. Cir. 1997) ..................22

*Grunenthal GmbH v. Alkem Labs. Ltd.*,
919 F.3d 1333 (Fed. Cir. 2019) ..................30, 31, 32

*HZNP Meds. LLC v. Actavis Labs. UT, Inc.*,
940 F.3d 680 (Fed. Cir. 2019) ..................3, 25, 26, 30

*In re Brimonidine*,
643 F.3d 1366 (Fed. Cir. 2011) ..................4

*In re Depomed Patent Litigation*,
2016 WL 7163647 (D.N.J. Sept. 30, 2016) ..................28

*Janssen Pharm., Inc. v. Mylan Labs. Ltd.*,
20CV13103 (EP) (LDW), 2023 WL 3605733, (D.N.J. May 23, 2023) .................... 1, 10, 11, 12

*King v. Verizon New Jersey, Inc.*,
Civ. No. 21-11226 (RMB/MJS), 2023 WL 5817126 (D.N.J. Sept. 6, 2023) .................... 17, 18

*Nicholas v. Penn. State Univ.*,
227 F.3d 133 (3d Cir. 2000) .................... 17

*Otsuka Pharm. Co. v. Torrent Pharms. Ltd.*,
99 F. Supp. 3d 461 (D.N.J. 2015) .................... 28

*Panduit Corp. v. Dennison Mfg. Co.*,
810 F.2d 1561 (Fed. Cir. 1987) .................... 11

*Par Pharm., Inc. v. Eagle Pharms. Inc.*,
No. CV 18-0823-CFC-JLH, 2021 WL 3886418 (D. Del. Aug. 31, 2021), aff'd, 44 F.4th 1379 (Fed. Cir. 2022) .................... 4

*Seahorse Oceanside Apartments Condo. Ass'n, Inc. v. Homesite Ins. Co.*,
446 F. Supp. 3d 1097 (S.D. Fla. 2020) .................... 15, 16

*Shire LLC v. Amneal Pharms., LLC*,
802 F.3d 1301 (Fed. Cir. 2015) .................... 9

*Sloan Valve Company v. Zurn Industries, Inc.*,
2013 WL 6132598 (N.D. Ill., Nov. 20, 2013) .................... 2, 5, 13

*Takeda U.S.A., Inc. v. West-Ward Pharm. Corp.*,
785 F.3d 625 (Fed. Cir. 2015) .................... 31, 32

*Tritek Techs., Inc. v. United States*,
208 F. App'x 869 (Fed. Cir. 2006) .................... 15

*Tritek Techs., Inc. v. United States*,
63 Fed. Cl. 740 (2005) .................... 15, 16, 17

*United States v. Komlo*,
802 F. App'x 676 (3d Cir.)(Jan. 29, 2020) .................... 28

*Verinata Health, Inc. v, Sequenom, Inc.*,
No. 12-00865, 2014 WL 4100638 (N.D. Cal. Aug. 20, 2014) .......... 11

*Warner-Lamber Co. v. Apotex Corp.*,
316 F.3d 1348 (Fed. Cir. 2003) .......... 4

*Watts v. Univ. of Delaware*,
622 F.2d 47 (3d Cir. 1980) .......... 20

**Rules**

Fed. R. Civ. P. 26 .......... 18

Fed. R. Civ. P. 26(a) .......... 14, 15, 16

Fed. R. Civ. P. 26(e) .......... 13, 14, 15, 16

Fed. R. Civ. P. 26(e)(1) .......... 14, 17

Fed. R. Civ. P. 37 .......... 18

Fed. R. Civ. P. 37(c)(1) .......... 14, 15

Fed. R. Civ. P. 56 .......... 29

Fed. R. Civ. P. 56(d) .......... 28, 29

Fed. R. Civ. P. 56(f) .......... 28

Local Patent Rule 3.6 .......... 10

Local Patent Rule 4.5 .......... 13

## ARGUMENT

The district court erred by granting summary judgment of non-infringement in favor of Appellee Rubicon for at least the reasons set forth in Appellant Metacel's opening brief (Met. Br.). Rubicon's brief in opposition (Opp. Br.) is unavailing for at least the following reasons.

### I. The District Court's Arbitrary Enforcement of Rules Allowing Rubicon to Advance a Novel Non-Infringement Theory at Summary Judgment Manifestly Prejudiced Metacel and Warrants Reversal.

Metacel was unfairly prejudiced when the district court granted summary judgment in favor of Rubicon based on arguments that were not elucidated until Rubicon's reply brief filed in support of Rubicon's motion for summary judgment ("MSJ"). After that, Metacel sought reconsideration based on the prejudice it faced due to Rubicon's 11th hour argument. The district court acted arbitrarily and capriciously by relying upon Rubicon's arguments in spite of Metacel's protestations and the court's departure from the Local Patent Rules and the Federal Rules of Civil Procedure. *See* Met. Br. at 27-28, 55-58; *see also Janssen Pharm., Inc. v. Mylan Labs. Ltd.*, 20CV13103 (EP) (LDW), 2023 WL 3605733, (D.N.J. May 23, 2023) ("*Mylan*"); *Celgene Corp. v. Hetero Labs Ltd.*, No. 17-3387, 2021 U.S. Dist. LEXIS 159262 (D.N.J. Mar. 29, 2021)

("*Celgene*"); *Sloan Valve Company v. Zurn Industries, Inc.*, 2013 WL 6132598, *11-12 (N.D. Ill., Nov. 20, 2013); *Canon, Inc. v. Color Imaging, Inc.*, 227 F. Supp. 3d 1303, 1311-1312 (N.D. Ga. 2016).

Rubicon does not rebut that the district court arbitrarily and capriciously enforced these Rules, thereby constituting clear error and prejudiced Metacel, and *de novo* review of the district court's judgment finding warrants overturning the district court's decision below. Appx6032; Appx6034-6040.

**a. Manifest prejudice arose due to Rubicon's failure to identify its storage limitation theory in its non-infringement contentions along with the timing of discovery relative to summary judgment briefing, which arose due to Metacel's adherence to the district court's scheduling order.**

Rubicon failed to identify its storage limitation theory (that Rubicon's label instructs storage at Temperature but permits storage under Temperature conditions, referred to the "Storage Limitation" herein)[1] until its reply MSJ brief. Met. Br. at 7-11, 23-26, 45-57. The district court found that Rubicon's opening MSJ brief

[1] Metacel's briefing here and in the district court refers to the Temperature limitation of the '502 Patent as the Storage Limitation (Met. Br. at 6), whereas the district court and Rubicon refer to it as the Fridge Limitation.

constituted adequate notice of the Storage Limitation argument, by pointing to Rubicon's singular, conclusory paragraph in Rubicon's opening MSJ brief. Appx9 (citing Appx559).

Rubicon's sole paragraph about the Storage Limitation failed to adequately place Metacel on notice because it lacked any cognizable notification of Rubicon's eventual argument raised in its reply MSJ brief and did nothing more than assert purported shortcomings in Metacel's infringement contentions. Met. Br. at 12-14. Rubicon's Storage Limitation paragraph merely averred that Metacel's infringement contentions citing a portion of the ANDA would fail to instruct a downstream user to Temperature Rubicon's product (Appx559), an argument that actually established a genuine issue of material fact because it was aimed at rebutting the underlying facts of Metacel's infringement contentions, rather proffering its own argument.

While Rubicon's Storage Limitation argument was distilled to the conclusion that the label "permits Temperature storage," it did not explain how this fell under the rubric of *HZNP Meds. LLC v. Actavis Labs. UT, Inc.*, 940 F.3d 680 (Fed. Cir. 2019). It also did not explain how the permissive storage condition amounted to a substantial, non-

infringing use under *Warner-Lamber Co. v. Apotex Corp.*, 316 F.3d 1348 (Fed. Cir. 2003). Rubicon's paragraph merely concluded that Metacel's citation to a portion of the ANDA was "legally insufficient to satisfy the legal requirements for indirect infringement," followed by two short-form case citations without further explanation. Appx559.

In its memorandum order, the district court stated: "[i]n fact, Rubicon's submission noted the differences between the RLD's storage statement and its ANDA; the submission informs the FDA that ANDA's Temperature *temperature* is identical to the RLD's when Temperature."[2] (emphasis in original). Appx10-11. In doing so, the district court erred by finding that Metacel was on notice of Rubicon's non-infringement theory based on the vague or non-responsive assertions of Rubicon. *See* Met. Br. at 12-14; *see also* Appx7-10.

---

[2] By ignoring Rubicon's labeling and representations to the FDA, the district court here acted in direct contravention of the precedent set by this Court: "courts 'cannot assume that [an ANDA filer] will not act in *full compliance* with its representations to the FDA.'" *Par Pharm., Inc. v. Eagle Pharms. Inc.*, No. CV 18-0823-CFC-JLH, 2021 WL 3886418, at *9 (D. Del. Aug. 31, 2021), aff'd, 44 F.4th 1379 (Fed. Cir. 2022) (citing *In re Brimonidine*, 643 F.3d 1366 (Fed. Cir. 2011), at 1378). Met. Br. at 20-21, 42-43, 53-54. Here, Rubicon told the FDA that it would store the product in the same manner as the RLD—Temperature—but argued to the district court and this Court contrarily.

Indeed, other district courts have prohibited conduct like Rubicon's, considering novel theories of non-infringement presented by defendant for the first time in summary judgment briefing and absent from non-infringement contentions, insufficient to place plaintiffs on adequate notice. Met. Br. at 57 (citing *Sloan* at *11-12). Importantly, the district court's interpretation of the Temperature statement as purportedly telling users what temperature to use ***when they*** Temperature the product implicitly admits that ***users actually would*** Temperature ***Rubicon's product***. Thus, the district court's finding to the contrary warrants reversal. Rubicon's brief to this Court does not address these issues.

**b. Rubicon characterized different storage conditions as the permissive condition at different times, demonstrating that Metacel could not have been on notice of Rubicon's non-infringement theory, that Rubicon's label was vague and ambiguous, and that genuine issues of material fact were and remain unresolved.**

Rubicon does not explain how its sole paragraph discussion of the Storage Limitation could have placed Metacel on notice of its eventual argument when Rubicon's own briefing contradicted which storage condition was the permissive one. As argued in its motion for leave for

summary judgment, and quoted in its opposition brief before this Court, Rubicon explained that "Rubicon's ANDA…***permits storage at*** [redacted] Temperature," (Opp. Br. At 10 (citing Appx71)(emphasis added)), whereas Rubicon now argues the opposite: that Temperature storage is the permissive use. Opp. Br. at 15. There is no way Metacel could have been on notice of which condition was the permissive one, and Metacel should not have been burdened with assuming what Rubicon was arguing or might eventually argue. Rubicon's inability to keep its own story straight, at the very least, demonstrates that their label is vague and ambiguous. Rubicon's contradictory characterizations of the label's statements also demonstrate the existence of genuine issues of material fact because of the apparent, differing interpretations, notwithstanding Metacel's factual assertions conflicting with Rubicon's attorney arguments. Met. Br. at 34, 43-44, 53-54.

**c. Rubicon does not justify its unreasonably delayed identification of its dispositive non-infringement theory.**

Rubicon contends that there "is no dispute that the now-approved FDA label for Rubicon's product directs the product to be stored at

Temperature, and optionally to be Temperature."[3] Opp. Br. at 3. Yet this issue forms the crux of the appeal in front of this Court.

Rubicon's brief strains credulity in its characterization of the proceedings below, the facts before the district court, and the purported simplicity of the issues. Rubicon contends that it would have been "known to Metacel at least as early as the filing of the Answer and production of the ANDA at or near the same time [that no dispute about the Storage Limitation existed]." *Id*. But if this issue arose as early as Rubicon posits, or it was as apparent as Rubicon suggests, why did Rubicon omit reference to the Storage Limitation in its Paragraph IV letter to Metacel? Why was reference to that theory not identified in Rubicon's Answer? Why did Rubicon wait until its reply MSJ brief to raise an issue that it could have raised on a motion to dismiss?

The answer to these questions is apparent: it is because Rubicon conjured its Storage Limitation argument at the 11th hour in its reply MSJ brief but would like to convince this Court that its theory was in front of Metacel all along. But Rubicon's assertions are unsupported by

---

[3] It is unclear what Rubicon means by "now-approved FDA label for Rubicon's product." Opp. Br. at 3. As of the date of this filing, Rubicon's ANDA product at issue in this case is not listed in the Orange Book as approved.

the record below. Rather than present its Storage Limitation argument sufficiently early in the case, Rubicon's case rested almost entirely on the disputed [redacted] limitation, which is where the litigation was centered until Rubicon's reply MSJ brief. Met. Br. at 51-52. The MSJ briefing schedule overlapping with expert discovery occurring pursuant to the scheduling order shows that Rubicon, itself, did not appreciate its own argument until its reply MSJ brief. Met. Br. at 17-19. Rubicon entirely overlooks these circumstances in its brief before this Court.

**d. Rubicon does not explain how its conclusory non-infringement contentions were sufficient to have put Metacel on notice of its non-infringement theory first conceived in Rubicon's reply MSJ brief.**

At the outset of the dispute below, Rubicon's non-infringement contentions about the Storage Limitation did nothing more than posit the legal conclusions of "No direct infringement, No indirect infringement due to split actor." Met. Br. at 26, 44, 52. Rubicon's opposition brief fails to justify that this contention said nothing about permissive storage conditions. At most, Rubicon's non-infringement contentions placed Metacel on notice of a potentially forthcoming divided infringement defense—an issue that had no bearing whatsoever on summary judgment.

If the district court's consignment of Rubicon's non-infringement contentions were to be adopted by this Court, litigants could simply state legal conclusions in their infringement, non-infringement, validity, and invalidity contentions, thereby eroding the entire purpose served by the Local Patent Rules and Federal Rules of Civil Procedure. For example, a patentee could initiate an infringement suit and submit a claim chart listing claim elements in one column and an assertion that "defendant infringes" on the other side, thereby satisfying their obligation under the Local Rules under the district court's rubric here. Clearly, this outcome is not something that should be embraced by this Court.

**e. The case law supports the finding that the district court's enforcement of the Rules was arbitrary and capricious, thereby unfairly prejudicing Metacel.**

Metacel's Opening Brief acknowledged that district courts are granted deference on decisions to enforce Local Patent Rules but this deference is constrained when the decision becomes "clearly unreasonable, arbitrary, or fanciful." Met. Br. at 31-32 (citing *Shire LLC v. Amneal Pharms., LLC*, 802 F.3d 1301, 1306 (Fed. Cir. 2015); *see*

*also* Met. Br. at 54, 58 (citing *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 762 (Fed. Cir. 2002)).

The U.S. District Court for the District of New Jersey's holdings in its cases, such as *Mylan* and *Celgene*, demonstrate that the decision here to not enforce Local Patent Rule 3.6 is arbitrary and capricious. And the district court's memorandum order denying Metacel's motion for reconsideration misapplied both cases. Met. Br. at 55-56; Appx7-9.

Turning first to *Mylan*, the district court denied defendant's attempt to advance a novel non-infringement theory because that theory was not disclosed in their non-infringement contentions. *See* Met. Br. at 54 (citing *Mylan* at *12). Here, Rubicon's non-infringement contentions similarly omit its primary legal theory for non-infringement, summarily stating: "No direct infringement, No indirect infringement due to split actor." Met. Br. at 27, 46; Appx7-9; Appx592.

In *Mylan*, the court emphasized that Local Rules are intended to place litigants on notice of the actual substantive and technical theories

of the case ahead, on a patent element-by-element basis.[4] *See Mylan* at *12 (citing *Celgene* at *12).

In *Celgene*, the district court enforced strict adherence to the disclosure requirements of the Local Rules for the defendant's failure to identify prior art references and expert report sections. *See Celgene* at *1-2. In *Celgene*, the district court emphasized that: "a party cannot 'add contentions or prior art disclosures late, as a strategic ploy, because the local patent rules in this District were intended to curb this type of gamesmanship.'" *Id.* at *2.

Despite the significant issue-overlap amongst *Mylan*, *Celgene*, and this case, the district court here did not provide any reasonable basis to depart from its typical adherence to the rules' strict mandates aside from an unsubstantiated and incorrect conclusion that the issues here were simpler than in other patent cases. Met. Br. at 28; Appx8. But perceived simplicity has no place in the review of a patent's claims. *See Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1572 (Fed. Cir.

---

[4] Notably, the language quoted in *Mylan* and *Celgene* stems from the Northern District of California, which is indicative of the frequent requirement of strict adherence to Local Patent Rules across jurisdictions. *See Verinata Health, Inc. v, Sequenom, Inc.*, No. 12-00865, 2014 WL 4100638 at *1 (N.D. Cal. Aug. 20, 2014)).

1987) ("The constitutional purposes [of the patent system] is to encourage disclosure of patentable contributions….The statute requires utility, novelty and nonobviousness, ***not complexity***." (emphasis added)).

Rubicon's brief hand-waves at the glaring shortcomings of its non-infringement contentions, arguing only that "Rubicon produced a claim chart separating out the specific claim elements that it contended were not infringed and this chart included an explicit identification of the Fridge Limitation as not infringed." Opp. Br. At 9. Rubicon's inability to identify any argument or contention beyond providing a bare-bones claim chart evinces the weakness of Rubicon's position, and the associated folly of arguing that its contentions could have placed Metacel on adequate notice of its eventual argument. Conclusory statements in Rubicon's contentions about the Storage Limitation show those contentions are insufficient to crystallize any substantive theory of non-infringement.

Rubicon shrugs-off the disparate treatment it received by the district court below compared to that received by other litigants, such as those in *Mylan*, by summing it as an example of "lower court decisions

wherein the district court exercised its discretion to manage its rules." Opp. Br. at 43. Rubicon, however, ignores that rule-management may not be arbitrary and capricious, as it was here.

Cases from other district courts barring parties from advancing late-stage, novel argument not disclosed in their initial contentions in violation of Local Patent Rules further support Metacel's position. *See* Met. Br. at 56-57 (citing *Sloan* at *11-12; *Canon* at 1311-1312).

In *Sloan*, the defendant presented a novel theory of non-infringement for the first time in its summary judgment briefing—a theory that was not presented in its non-infringement contentions and a theory for which defendant did not seek leave to amend its non-infringement contentions. *See* Met. Br. at 56-57 (citing *Sloan* at *11-12).

In *Canon*, the district court granted plaintiff's motion to exclude a novel non-infringement theory because defendants "did not introduce this theory during claim construction or supplement their non-infringement contentions following claim construction, as required by Patent Local Rule 4.5," and "failed to comply with Fed. R. Civ. P. 26(e), since they did not supplement their discovery responses or non-infringement contentions with this new theory." Met. Br. at 57 (citing

*Canon* at 1311). The district court in *Canon* also found that "under Rule 37(c)(1), ***Defendants*** have not shown that their failure to supplement this information under Rule 26(e) is substantially justified or harmless." (emphasis added). Met. Br. at 57 (citing *Canon* at 1312).

Here, Rubicon has not shown that its failure to satisfy its ongoing obligations to supplement its disclosures under Rule 26(e) was either substantially justified or harmless. Met. Br. at 30; *see also* Appx6328-6329. And the district court overlooked Metacel's showing of the resulting harm imposed on Metacel. Met. Br. at 50-52.

Rubicon makes two arguments against *Canon*. Neither are persuasive.

First, Rubicon argues that there was no appellate review of *Canon*. Opp. Br. at 44. But it is hornbook law that precedent and cited legal authority is not limited to that which has undergone appellate review.

Second, Rubicon contends that the district court "found no impropriety or prejudice on behalf of Rubicon." Opp. Br. at 44. But Rule 26(e)(1) requires that a "party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for

production, or request for admission—must supplement or correct its disclosure or response." Met. Br. at 47. Further, Rule 37(c)(1) requires that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Id.* at 48; *see also Tritek Techs., Inc. v. United States*, 63 Fed. Cl. 740, 750 (2005), *affd*, *Tritek Techs., Inc. v. United States*, 208 F. App'x 869 (Fed. Cir. 2006). These Rules aim "to prevent a 'shifting sands' approach to patent litigation" because they necessarily result in prejudice to responding litigants. *Tritek* 63 Fed. Cl. at 743.

Rubicon also argues that *Seahorse Oceanside Apartments Condo. Ass'n, Inc. v. Homesite Ins. Co.*, 446 F. Supp. 3d 1097 (S.D. Fla. 2020) is distinguishable because it involved a party's failure to provide crucial information during discovery. Opp. Br. at 42 (citing *Seahorse* at 1105-10). But the facts here align with *Seahorse*—Rubicon did not supplement its discovery responses or non-infringement contentions with the novel non-infringement theory presented in their reply MSJ brief as required by Rule 26(e). If anything, *Seahorse* highlights that the

district court erred by allowing Rubicon to use information in its reply MSJ brief that it was required to provide (but did not) under Rule 26(a) or 26(e). *See Seahorse* at 1107. And to the extent that Rubicon attempts to rely on *Seahorse* to say Metacel did not timely provide its evidentiary support, this would ignore that Metacel's evidence ***was timely*** under the district court's scheduling order. Met. Br. at 23, 26.

*Cunningham v. Fulton Cnty., Georgia*, 785 F. App'x 798, 804 (11th Cir. 2019) affirmed exclusion of evidence where defendants "didn't list these documents as part of their initial disclosures or supplement their disclosures thereafter. And, importantly, the district court found that the employees didn't give any explanation for their failure to disclose." Rubicon attempts to distinguish *Cunningham* by proposing that Rubicon has no burden of "proving non-infringement" as the defendant. Opp. Br. at 43. But this argument ignores that Rubicon was obligated to timely disclose its non-infringement theories and bore the burden on summary judgment. Met. Br. at 25, 49-52. And Metacel seeks to prove infringement should it be able to bring its claims at trial.

Rubicon contends Metacel's reliance on *Tritek* 63 Fed. Cl. is misplaced, by again simply asserting that lower courts have broad

discretion in controlling discovery. Opp. Br. at 43. Rubicon again overlooks that the *Tritek* court's denial of summary judgment was based on defendant's failure to timely identify its non-infringement theory by waiting until summary judgment briefing. *Tritek* 63 Fed. Cl. at 749-50. Rubicon does not legitimately rebut district courts' default to strict adherence to rules requiring complete, timely disclosure of non-infringement theories and related discovery. Met. Br. at 47-51; *Tritek* 63 Fed. Cl. at 746 ("By its clear language, [FRCP 26(e)(1)] places a burden on the answering party to supplement an answer to a prior response if it learns that the response, even if correct at the time given, has become incomplete.").

Metacel's reliance on the other cases it cites is straightforward: they demonstrate the typical approach of strict adherence to discovery rules to prevent late-stage assertion of novel legal theories to avoid the type of gamesmanship and prejudice that arose here. *See* Met. Br. at 50-52 (citing *King v. Verizon New Jersey, Inc.*, Civ. No. 21-11226 (RMB/MJS), 2023 WL 5817126, at *9 (D.N.J. Sept. 6, 2023) (quoting *Nicholas v. Penn. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000))).

Metacel's opening brief identified all the factors and instances that prejudiced Metacel. Br. at 24-25, 50-52; *supra* at 1-5, 9-16. Rubicon does not seriously rebut any of the cases Metacel cites. Instead, it feigns ignorance to their application and repeatedly avers that district courts have discretion to manage their dockets without further substantive consideration. Opp. Br. at 17-18, 38-40, 43. Rubicon makes no legitimate attempt to show that Metacel was not unfairly prejudiced by Rubicon's untimely disclosures and the resulting arbitrary and capricious application of those rules. Indeed, Rubicon's brief entirely omits any discussion relating to Rule 26 and Rule 37. And their only reference to *King* is that "the district court considered the record and found that Metacel was on notice and was not prejudiced, and such findings are strongly supported in the record." Opp. Br. at 43. The prejudice imposed on Metacel warrants overturning the district court's grant of summary judgment.

## II. The District Court Erred by Resolving a Genuine Issue of Material Fact at Summary Judgment and further at the Motion for Reconsideration Stage.

In its memorandum order resolving Metacel's motion for reconsideration reaffirming its summary judgment findings, the district

court proffered its own factual analysis when it found that: "[i]n fact, Rubicon's submission noted the differences between the RLD's storage statement and its ANDA; the submission informs the FDA that ANDA's Temperature *temperature* is identical to the RLD's when Temperature." (emphasis in original). Appx10-11.

At the summary judgment stage, the Court "may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) at 255; Met. Br. at 39.

Here, the district court engaged in improper fact-finding to resolve a genuine issue of material fact about the discrepancy between Rubicon's label and its representations to the FDA, which Metacel cited as evidence of Rubicon's intent to encourage users to Temperature its ANDA product. *See* Met. Br. at 42-43; *see also* Appx6041-6042. By doing so, it necessarily follows that there was at least one genuine issue of material fact in dispute related to infringement of the Storage Limitation at the summary judgment stage, and thus summary judgment was improper.

Even if it were proper for the district court to engage in fact-finding at the summary judgment stage under these circumstances (it is not), the reasoning employed by the district court does not resolve the dispute that it sought to: stating that the "the submission informs the FDA that ANDA's Temperature temperature is identical to the RLD's when Temperature." Met. Br. at 29. This contention is unsupported by the record and the parties' arguments and is unrelated to Rubicon's purported lack of intent. Indeed, the resultant shakiness of the district court's finding based on its own analysis of the facts is why the controlling circuit for the district court below has noted that "issues of intent are not well suited to disposition by summary judgment." *Watts v. Univ. of Delaware*, 622 F.2d 47, 50 (3d Cir. 1980). Rubicon does not address *Watts*, or the propriety of the district court's findings about storage temperatures. Accordingly, the foregoing demonstrates the error in the district court's decision.

## III. The District Court Erred by Failing to Consider the Substantial Evidence Supporting Non-movant Metacel's Arguments Opposing Rubicon's Motion for Summary Judgment.

### a. Rubicon misconstrues Metacel's expert's opinion, which the district court failed to consider.

Metacel's expert witness, Dr. Savello, is a licensed pharmacist. It is undisputed that as a pharmacist, Dr. Savello would be an exemplary downstream user of Rubicon's Product. In fact, Dr. Savello was the only person involved in this dispute with the experience and knowledge to opine on the behavior of a downstream user, which he relied upon to opine how an end user would view Rubicon's label and store Rubicon's product. *See* Met. Br. at 40-41, 45; *see also* Appx880-885. In his declaration in support of the motion for reconsideration, Dr. Savello presented unrebutted evidence that demonstrated that the views expressed in his expert reply report are consistent with his colleagues and similarly-situated downstream users. Appx6055-6057; Appx6241-6250.

Dr. Savello's expert opinion on this issue remains unrebutted and unresolved because the district court did not address the substance of Dr. Savello's opinion. *See* Appx11 at n.5. In its first effort to rebut Dr. Savello's opinions, Rubicon now argues that Dr. Savello's positions are speculative, "pure quackery," implausible, and based on non-public versions of Rubicon's ANDA. *See* Opp. Br. at 14-16, 30, 33. These arguments misrepresent the factual record in an effort to sidestep the

unresolved genuine issues of material fact, and ring hollow for at least three reasons.

First, Rubicon argues: "[t]he crux of Dr. Savello's submissions are speculations that the downstream user ***would be confused by either the non-public ANDA section referenced above*** or by the permissive language of the actual ANDA label provided to the downstream user." (emphasis added). Opp. Br. at 15.

This argument is legally incorrect at least because ANDA infringement theories are necessarily hypothetical. *See Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1569 (Fed. Cir. 1997). This argument also misconstrues Dr. Savello's opinion. Dr. Savello opined that when he reviewed the proposed public-facing label, Dr. Savello had never seen a label similar to Rubicon's, i.e., one that lists opposite storage conditions[5]: "when viewing Defendant's Product ***label*** without more information, I may question which conditions to store Defendant's

[5] Rubicon's expert defined the different storage conditions as being "opposite" (Appx6490-6491), which cuts against one as being permissive, and at the very least, demonstrates that the label's instructions were vague and ambiguous. Regardless of whether Dr. Savello, or any other downstream user, would consider them opposites, or at the very least, different, remains an unresolved issue created by Rubicon's own expert.

Product given the 'opposite' storage conditions listed on Defendant's Product ***label***. As a pharmacist, I have never seen a drug ***label*** that explicitly lists 'opposite' storage conditions, i.e., Temperature and [redacted] Temperature storage, as Defendant's Product ***label*** does." Appx6553 (emphasis added). Dr. Savello elaborated that since Rubicon's label lists "opposite" storage conditions, he would not know which conditions to store Rubicon's Product under, and lacking clear guidance from the label, he would either defer to the storage instructions for the branded drug (RLD) or default to Temperature storage due to the undisputed and well-understood benefits of Temperature. Met. Br. at 22-23; Appx6553.

Notably, Dr. Savello's opinions were not considered by the district court when it ruled on summary judgment. *See* Met. Br. at 23, 28, 38, 41, 43; *see also* Appx6017 at n.7. The district court stated: "Metacel's expert Dr. David R. Savello likewise spends just a few paragraphs on the Fridge Limitation, parroting the arguments in Metacel's brief," despite Dr. Savello's expert reply report dedicating over 25 paragraphs

of discussion on the Storage Limitation. Met. Br. at 19; *see also* Appx6552-6560.[6]

Second, Rubicon argues: "[t]he district court rejected Metacel's arguments pertaining to other portions of the ANDA and the declaration submitted by Dr. Savello on the grounds that such arguments were factually and legally insufficient to create a genuine issue of material fact on the Fridge Limitation issue." Opp. Br. at 12.

Dr. Savello provided evidence from his fellow pharmacists (the American Society of Health-System Pharmacists), who also would be downstream users of Rubicon's Product, and which substantiated his opinion and analysis. Appx6055-6057; Appx6241-6250. He provided this evidence to show that his opinion to defer to RLD labeling was not heterodox among pharmacists, but which Rubicon insultingly and incorrectly characterizes as "quack theories tied to irrelevant information." Opp. Br. at 29.

---

[6] As Metacel has noted, because of the scheduling order in this case, discovery was ongoing and both the reply brief in support of summary judgment and the rebuttal expert report of Rubicon, both of which greatly expanded the scope of Temperature storage argument, were received after Dr. Savello's opening report. Met. Br. at 23, 47, 50-51.

Rubicon, on the other hand, posits unsubstantiated and legally baseless arguments refuting Dr. Savello's well-supported analysis: "[Dr. Savello's] speculative conclusion is that the downstream user would then turn to Metacel's own brand label, which requires Temperature, and would thereby be induced (by Metacel's label) to Temperature." Opp. Br. at 16; *see also HZNP* at 685 (noting that "[i]n evaluating the inducement argument, the district court considered, among other things, the asserted claims of the method-of-use patents and the respective labels for both [the RLD] and [the generic]."). But Rubicon then refers to *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 845 F.3d 1357 (Fed. Cir. 2017) to remind us that "'vague' instructions [may] require one to 'look outside the label to understand the alleged implicit encouragement'" Opp. Br. at 34-35. Here, the "opposite" storage conditions (as characterized by Rubicon's expert), coupled with Dr. Savello's well-cited analysis based on his many years of experience as a pharmacist would, at the least, require review of information beyond the label itself.

*Amarin Pharma, Inc. v. West-Ward Pharms. Int'l Ltd.*, 407 F. Supp. 3d 1103 (D. Nev. 2019) applies to the facts here because Dr.

Savello's opinion is neither inconsistent nor implausible with the proposed labeling. *Amarin* at 1111-12. His views are not obscure, unique, or heterodox from the views of his pharmacist colleagues, and the American Society of Health-System Pharmacists' study he cites—which was not considered by the district court—demonstrates that his expert opinion is the ***recommended*** practice, even when patients are receiving a generic. *See* Appx6055-6057; Appx6241-6250. Notably, *Amarin* distinguished over *HZNP*, because the expert in *Amarin* offered a plausible interpretation of labeling. Opp. Br. at 32-33; Met. Br. at 37.

Third, Rubicon argues that Metacel's evidence was actually considered by the district court in rendering its opinion." Opp. Br. at 14. But the district court did not consider Dr. Savello's opinions: "[w]hatever the merit of this argument, it is clear that the arguments were not previously presented, and thus will not be considered here." Appx11 at n.5; Met. Br. at 43-44. Consequently, it is apparent that the district court did not consider the evidence presented to it, which constitutes legal error under the circumstances that arose below.

**b. The district court failed to consider evidence from Rubicon's own witness indicative of Rubicon's intent to induce infringement.**

Rubicon's 30(b)(6) witness, Dr. Gadkari, "explain[ed] that it is the requirement of FDA that your label should be the same as that of the reference listed drug. However, Rubicon's product is stable at [redacted] but as per the ***FDA's recommendation***...the statement stating that it can be stored at [redacted] [redacted] should also be a part of the label in addition to the storage at [redacted]." (emphasis added). Opp. Br. at 17 (citing Appx5758-5759).

In reference to Dr. Gadkari's testimony, Dr. Savello opined "[g]iven Defendant's Product label is not required to list the [redacted] storage condition, but is only a recommendation by the FDA, then what purpose does adding an alternative storage condition serve?" Appx6552-6553. In other words, what purpose could it serve for patients, downstream users, and FDA's assessment of approval, aside from a tactic to avoid patent infringement in contravention of the factual record?

The district court did not address this question and Rubicon has not explained its willful decision to include non-required storage conditions on its labeling that show induced infringement. *Compare*

*with In re Depomed Patent Litigation*, 2016 WL 7163647 at *61 (D.N.J. Sept. 30, 2016) (considering a Defendant's removal "of language from its ANDA labeling to be evidence weighted against finding specific intent); *see also Otsuka Pharm. Co. v. Torrent Pharms. Ltd.*, 99 F. Supp. 3d 461, 485 (D.N.J. 2015). Considering the converse—Rubicon's decision here to leave language on its ANDA labeling, when it is not required, should be considered evidence weighing toward finding specific intent.

## IV. Rubicon's Other Procedural Arguments are Unconvincing, and to the Extent that Metacel Could Have Sought Relief Other Than What it Sought Below, Balancing the Prejudice to the Parties Clearly Favors the Relief Metacel Seeks on Appeal.

Rubicon contends that Metacel could have sought relief under Fed. R. Civ. P. 56(f). Opp. Br. at 11. This argument appears to be referring to an outdated version of Rule 56(f) that previously allowed for continuance of a summary judgment ruling if a party is unable to present facts to justify its position, but after December 2010, that mechanism resides under Rule 56(d).

Rubicon cites to *United States v. Komlo*, 802 F. App'x 676, 679 (3d Cir.)(Jan. 29, 2020), which did not invoke Rule 56(f) or Rule 56(d) at all, so Rubicon cites no authority to support its position.

To the extent that current Rule 56(d) did or does apply, or could have been invoked by Metacel, this only becomes evident with the benefit of hindsight and a full procedural record from below. Metacel's opposition MSJ brief informed the district court that discovery was ongoing. Met. Br. at 26-29, 50-51; Appx5947. Moreover, Metacel satisfied Rule 56's requirement that a non-moving party come forward with specific facts showing there is a genuine issue for trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986). Although Metacel acknowledges that it may be slighted by not expressly invoking Rule 56(d), Metacel satisfied Rule 56's evidentiary burden by presenting specific facts to the district court as soon as they were elucidated pursuant to the scheduling order's deadlines. Appx817-842. Metacel raised these issues in its motion for reconsideration. Met. Br. at 26-29, 50-51. While the outcome below may have turned out differently if Metacel's protests were premised under Rule 56(d), that outcome is speculative and ignores that any detrimental outcome to Metacel on this procedural basis would be an unjust reliance on form over substance based on Metacel's factually supported arguments over the district court's grant of summary judgment in view of the circumstances

below. In addition, a ruling in favor of Rubicon premised on a minor procedural misstep on behalf of Metacel, weighed against the egregious procedural improprieties that benefitted Rubicon, would be irreconcilably prejudicial to Metacel.

## V. This Case is Distinguishable from *HZNP*, *Grunenthal*, and *Takeda*.

Metacel previously addressed the distinction between this case and *HZNP*. Rubicon's rebuttal is unavailing. Met. Br. at 36-39.

Rubicon's brief cites *Grunenthal GmbH v. Alkem Labs. Ltd.*, 919 F.3d 1333 (Fed. Cir. 2019) for the proposition that it is "insufficient to establish the intent required to find induced infringement where the labels 'do not implicitly or explicitly encourage or instruct users to take action that would inevitably lead to' infringement." Opp. Br. at 36 (citing *Grunenthal* at 1340). In *Grunenthal*, the court's holding of non-infringement was premised on the fact that the Defendants "specifically carv[ed] out the neuropathic pain indication [the patented use]…[and thus,] the labels do not encourage infringement[.]" *Grunenthal* at 1340. Here, *Grunenthal* is distinguishable because Rubicon did not "carve

out" the infringing use from its label, although it appears that Rubicon could have.

Rubicon cites *Takeda U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625 (Fed. Cir. 2015) because it purportedly reaches the same conclusions as *Grunenthal*. Opp. Br. at 36-38 (citing *Takeda* at 627-29, 1682-83). In *Takeda*, the Defendant's "label stated that [the generic] is 'indicated for prophylaxis [a non-patented use]' and that the 'safety and effectiveness of [it] for acute treatment of gout flares [the patented use] during prophylaxis has not been studied[,]" and also, "'[i]f you have a gout flare while taking [the generic], tell your healthcare provider.'" *Takeda* at 630. There, the plaintiff's induced infringement argument, which was rejected by the court, was premised on defendant's label including language that instructed patients to "tell your healthcare provider," which plaintiff argued, "will 'inevitably' lead to physicians who are consulted to advise patients taking [the generic] for prophylaxis [a non-patented use] to simply increase their dose of [the generic] to treat acute gout flares [the patented use], and that [defendant] was aware of or willfully blind to this possibility." *Id.* at 632.

Like *Grunenthal*, *Takeda* is readily distinguishable from this case because Rubicon's label expressly includes the infringing use, although it appears that Rubicon did not need to include it.

## CONCLUSION

The foregoing reply to Rubicon's opposition brief and Metacel's opening brief before this Court show the prejudice to Metacel arising from Rubicon's untimely presentation of arguments along with the district court's arbitrary and capricious enforcement of the rules that ultimately resulted in entry of summary judgment in favor of Rubicon based on this untimely argument. Accordingly, this Court should reverse the district court's summary judgment ruling, or in the alternative, remand the case back to the district court to conduct proper fact-finding, prior to further summary judgment briefing at the district court.

Dated: April 10, 2024

Respectfully submitted,

*/s/* Matthew D. Zapadka

Matthew D. Zapadka
Kevin M. Bell
ARNALL GOLDEN GREGORY LLP
2100 Pennsylvania Ave NW,
Suite 350S
Washington, DC 200037
(202) 677-4930

*Counsel for Plaintiff-Appellant*

**CERTIFICATE OF COMPLIANCE**

This motion complies with the type-volume limitations of Fed. R. App. P. 27(d)(2). According to the word-processing system used to prepare it, the motion contains 6117 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

/s/ Matthew Zapadka

Matthew Zapadka

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on the 11th of April 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit via the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/ Matthew Zapadka

Matthew Zapadka

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF CONFIDENTIAL MATERIAL

**Case Number:** 2023-2386

**Short Case Caption:** Metacel Pharmaceuticals, LLC v. Rubicon Research Private Limited

**Instructions:** When computing a confidential word count, Fed. Cir. R. 25.1(d)(1)(C) applies the following exclusions:

- Only count each unique word or number once (repeated uses of the same word do not count more than once).
- For a responsive filing, do not count words marked confidential for the first time in the preceding filing.

The limitations of Fed. Cir. R. 25.1(d)(1) do not apply to appendices; attachments; exhibits; and addenda. *See* Fed. Cir. R. 25.1(d)(1)(D).

The foregoing document contains 15 number of unique words (including numbers) marked confidential.

☑ This number does not exceed the maximum of 15 words permitted by Fed. Cir. R. 25.1(d)(1)(A).

☐ This number does not exceed the maximum of 50 words permitted by Fed. Cir. R. 25.1(d)(1)(B) for cases under 19 U.S.C. § 1516a or 28 U.S.C. § 1491(b).

☐ This number exceeds the maximum permitted by Federal Circuit Rule 25.1(d)(1), and the filing is accompanied by a motion to waive the confidentiality requirements.

Date: 04/11/2024

Signature: /s/ Matthew Zapadka

Name: Matthew Zapadka